RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0041p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

HASKELL G. GREER, et al.,

          *Plaintiffs-Appellees*,

     *v.*

CITY OF HIGHLAND PARK, MICHIGAN, et al.,

          *Defendants-Appellants*.

No. 17-1281

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 5:15-cv-12444—Judith E. Levy, District Judge.

Argued: January 24, 2018

Decided and Filed: March 2, 2018

Before: COLE, Chief Judge; SILER and COOK, Circuit Judges.

_____

## COUNSEL

**ARGUED:** James W. McGinnis, LAW OFFICE OF JAMES W. MCGINNIS, Detroit, Michigan, for Appellants. Elizabeth A. Downey, ELIZABETH A. DOWNEY, P.C., Farmington Hills, Michigan, for Appellees. **ON BRIEF:** James W. McGinnis, LAW OFFICE OF JAMES W. MCGINNIS, Detroit, Michigan, for Appellants. Elizabeth A. Downey, ELIZABETH A. DOWNEY, P.C., Farmington Hills, Michigan, Jeffrey T. Stewart, SEIKALY, STEWART & BENNETT, P.C., Farmington Hills, Michigan, for Appellees.

_____

## OPINION

_____

     SILER, Circuit Judge. Individual defendants ("the officers") in this 42 U.S.C. § 1983 matter appeal the district court's denial of their motion for judgment on the pleadings based on

qualified immunity.  Because we find that the complaint states a plausible claim that the officers violated the plaintiffs' clearly established Fourth Amendment rights by executing a search warrant on their home in an unreasonable manner, we **AFFIRM** the district court's decision.

## FACTUAL AND PROCEDURAL HISTORY[1]

Plaintiffs are family members who live in West Bloomfield Township, Michigan.  They include a mother, father, three daughters, and a nephew, Alexander Lawrence, who was an overnight guest on the evening at issue ("the Greers").  On October 29, 2014, at approximately 4:00 a.m., thirteen police officers wearing SWAT gear and face masks blew open the door of the Greers' home with a shotgun.  The officers did not knock or announce their presence.  The parents and their daughters were ordered onto their knees at gunpoint, and the officers handcuffed the nephew after bringing him up from the basement.  The Greers asked to see the search warrant on multiple occasions, but the officers refused to show it.  The officers also did not allow the mother to sit with her youngest daughter, who was seven years old at the time.

The officers stated that they were searching for a "dangerous Russian," Vitaliy Strugach, who had evidently resided at the Greers' home more than a year prior to the search.  Neither the suspect nor any contraband was located at the residence.  The Greers thereafter filed a complaint with local law enforcement, and West Bloomfield officers investigated the circumstances of the search.  The Highland Park Police Department, which had evidently conducted the search of the Greers' home, produced the underlying search warrant in response to the complaint.  The search warrant described the Greers' home as the place to be searched, and it listed controlled substances and items connected to narcotics trafficking as the items to be seized.

The Greers filed suit in 2015, claiming that the Highland Park officers violated their Fourth Amendment rights by either serving an invalid search warrant or by improperly executing

---

[1]The factual background has been adopted from the second amended complaint, which we take as true.  *See Reilly v. Vadlamudi*, 680 F.3d 617, 622–23 (6th Cir. 2012) (stating that, when reviewing a district court's denial of a motion under Rule 12(c) based on qualified immunity, this court must "accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff" (internal citation and quotation marks omitted)).

a valid warrant.[2]  The officers filed a Rule 12(c) motion based on qualified immunity, which the district court denied as to the individual defendants.[3]  Fed. R. Civ. P. 12(c).  They now appeal, arguing that the district court should have granted them qualified immunity and dismissed the Greers' Fourth Amendment claim.

## STANDARD OF REVIEW

When defendants appeal denial of a Rule 12(c) motion for judgment on the pleadings based on qualified immunity, "we review de novo whether the complaint alleges violation of a clearly established constitutional right."  *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562 (6th Cir. 2011).  This standard of review is the same as that used for motions to dismiss pursuant to Rule 12(b)(6): the allegations must state a plausible claim for relief.  *Reilly*, 680 F.3d at 622; *Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2006).  "No heightened pleading requirement applies" to our review of a motion to dismiss based on qualified immunity.  *Heyne*, 655 F.3d at 562.

## DISCUSSION

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Because it is not merely a defense to liability but rather one to suit, once qualified immunity is raised, a plaintiff bears the burden of demonstrating that the defendant is not entitled to immunity.  *Gavitt v. Born*, 835 F.3d 623, 640–41 (6th Cir. 2016).  At the pleading stage, the plaintiff must state facts "making out a plausible claim that [the defendant's] conduct violated a constitutional right that was clearly established at the time of the violation."  *Id.* at 641.  "To satisfy this requirement, the right allegedly violated must have been clearly established in a particularized sense, such that a reasonable official confronted with the same situation would have known that his actions would be in violation of that right."  *Id.* (quotation marks omitted).

---

[2]The nephew also brought a false imprisonment claim under Michigan law.

[3]The district court only dismissed the false imprisonment count against the municipality.

Thus, the Greers must demonstrate that: (1) the officers, acting under color of state law, violated their constitutional right; and (2) the constitutional right was "clearly established" at the time of the alleged violation, in that a reasonable officer would have known that the conduct was unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). We address both of these prongs in turn.

## I.        Constitutional Violation

Reading the second amended complaint in the light most favorable to the Greers, it is plausible that the officers violated their Fourth Amendment rights by conducting the search of their home in an unreasonable manner. *Heyne*, 655 F.3d at 562–63.

Officers executing a search warrant must knock and announce that they are seeking entry into a home and then wait a reasonable amount of time before entering. *United States v. Spikes*, 158 F.3d 913, 925–26 (6th Cir. 1998). Although the potential presence of drugs "lessens the length of time law enforcement must ordinarily wait outside before entering a residence," it does not justify abandonment of the knock-and-announce rule. *Id.* at 926. Furthermore, when officers execute a warrant at night, "the length of time the officers should wait increases." *Id.* at 927.

Here, the Greers allege that the officers did not knock or announce but instead immediately blew down their front door with a shotgun. Although the officers were searching for controlled substances, the potential presence of drugs merely lessened the amount of time they should have waited before entering; it did not vitiate the requirement of knocking and announcing their presence. *Id.* at 926. Moreover, the Greers claim that the officers executed the warrant at approximately 4:00 a.m., when they had "reason to believe that a prompt response from the homeowner would be unlikely." *Id.* at 927. Thus, the Greers have sufficiently alleged a violation of their Fourth Amendment rights pursuant to the knock-and-announce rule.

Furthermore, the Greers claim that the officers failed to present the warrant when asked. One primary purpose of a search warrant is to demonstrate that the agents have been granted authorization to search. *See Camara v. Mun. Court*, 387 U.S. 523, 530–33 (1967). This purpose cannot be served if executing officers withhold presentation of the warrant despite repeated requests to see it. The decision to withhold the search warrant, therefore, is "a relevant factor in determining the reasonableness of a search." *Baranski v. Fifteen Unknown Agents of Bureau of*

*Alcohol, Tobacco & Firearms*, 452 F.3d 433, 443 (6th Cir. 2006). Here, the Greers' allegation that the officers refused to show them the search warrant further supports their claim that the officers executed the search warrant in an unreasonable manner.[4]

The officers argue that the Greers are required to specify what actions each officer took during execution of the warrant. Although "damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right," *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008), courts are disinclined to dismiss complaints that fail to allege specific conduct by each officer when the officers' actions have made them impossible to identify. *See Burley v. Gagacki* (*Burley I*), 729 F.3d 610, 622 (6th Cir. 2013) (upholding denial of qualified immunity because the defendants were present at the search and plaintiffs were unable to distinguish which officers entered their home when "the officers wore black clothing and face masks, with the intent to conceal their identities, and refused to provide their names when asked"); *McLeod v. Benjamin*, No. 1:15-CV-639, 2016 WL 6947546, at *6 (W.D. Mich. Nov. 28, 2016) ("Defendants' reading of Sixth Circuit precedent on individual liability would essentially immunize officers to excessive force claims so long as they sufficiently disguise their identities and deny personal involvement.").

Here, the Greers' "inability to identify the specific officers involved in their alleged deprivation of rights does not mandate dismissal" because the officers allegedly wore face masks and refused to identify themselves. *Rauen v. City of Miami*, No. 06-21182-CIV, 2007 WL 686609, at *4 (S.D. Fla. Mar. 2, 2007). Thus, "the agents' intent to conceal contributed to [the Greers'] impaired ability to identify them." *Burley I*, 729 F.3d at 622. As in *Burley I*, the parties here do not dispute that a raid of the Greers' home occurred, and the appealing officers have been identified as the parties who executed the search warrant. *Id.* Under these circumstances, if we dismissed the Greers' complaint at the pleading stage, we would risk immunizing officers to Fourth Amendment claims so long as they successfully disguised their identities. *See McLeod*,

---

[4]The Greers set forth additional accusations supporting their claim that the officers unreasonably executed the search warrant. Having found that the officers violated the Greers' Fourth Amendment rights by failing to knock and announce and by refusing to present the search warrant, however, we need not reach these other accusations.

2016 WL 6947546, at *6. We decline to set such precedent and, therefore, uphold the district court's denial of qualified immunity despite the Greers' failure to specify in their complaint which acts were committed by whom.

## II.          Clearly Established Rights

Having found that the Greers' complaint plausibly alleges a Fourth Amendment violation, we must now determine whether the Greers' rights violated by the officers were clearly established at the time of the search. *Hope*, 536 U.S. at 739.

"For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (internal citation and quotation marks omitted). "[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Id.*

The right to be free from unreasonable searches and seizures is clearly established, *Graham v. Connor*, 490 U.S. 386, 392–93 (1989), and the reasonableness of a search or seizure is evaluated based on a totality of the circumstances, *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). "To satisfy the Reasonableness Clause, officers not only must obtain a valid warrant but they also must conduct the search in a reasonable manner." *Baranski*, 452 F.3d at 445.

Here, the Greers argue that the search of their home was clearly unconstitutional due to numerous factors, including: "failure to knock and announce"; "an unnecessary nighttime raid"; and "failure to show a warrant upon request or by the end of the search." "[I]t is clearly established law that the [F]ourth [A]mendment forbids the unannounced, forcible entry of a dwelling in the absence of exigent circumstances." *Hall v. Shipley*, 932 F.2d 1147, 1151 (6th Cir. 1991) (internal citation and quotation marks omitted); *see Hudson v. Michigan*, 547 U.S. 586, 589 (2006) ("The common-law principle that law enforcement officers must announce their presence and provide residents an opportunity to open the door is an ancient one."). Exigent circumstances may include the following situations: "(1) there would be a danger to the officer; (2) there would be danger of flight or destruction of evidence; (3) a victim or some other person is in peril; or (4) it would be a useless gesture such as when the person within already knew the

officer's authority and purpose." *United States v. Pelayo–Landero*, 285 F.3d 491, 498 (6th Cir. 2002) (internal quotations omitted).

In this case, the Greers claim that the officers did not knock or announce their presence before entering the residence, and—taking the Greers' factual allegations as true—exigent circumstances did not excuse the officers' disregard of the knock-and-announce rule. Although the search warrant listed controlled substances as items to be seized, which could potentially be destroyed, the presence of drugs alone did not vitiate the knock-and-announce requirement. *See Spikes*, 158 F.3d at 926. Moreover, the Greers state that they were in bed when the officers arrived and that they presented no threat of violence. The warrant gives no indication that a person was in peril at the Greers' home. Finally, facts set forth in the complaint clearly allege that no person within the home knew of the searching officers' authority or purpose. These facts indicate a lack of exigent circumstances.

Furthermore, "[n]ighttime searches have long been recognized as more intrusive than searches conducted during the day." *Yanez-Marquez v. Lynch*, 789 F.3d 434, 465 (4th Cir. 2015) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 477 (1971)). Indeed, it is "difficult to imagine a more severe invasion of privacy than the nighttime intrusion into a private home." *Jones v. United States*, 357 U.S. 493, 498 (1958). Consequently, the officers' failure to knock and announce their presence at the Greers' home at 4:00 a.m. absent exigent circumstances was clearly unconstitutional.

As to the officers' refusal to show the Greers the search warrant, it is clearly established that the purpose of a search warrant—informing citizens that the searching agents are authorized—cannot be accomplished if executing officers withhold presentation of the warrant despite an occupant's requests to view it. *See Camara*, 387 U.S. at 530–33. The Greers claim that they repeatedly asked to see the warrant, and the officers refused. Furthermore, they state that the officers failed to leave a copy of the warrant at the Greers' home after the search concluded. These alleged facts further support the Greers' claim that the officers violated their clearly established Fourth Amendment rights by conducting the search of their home in an unreasonable manner.

Thus, taking the facts alleged in the second amended complaint as true, the district court properly found that the Greers stated a claim for relief that is plausible on its face. *See Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) ("Although insubstantial claims against government officials should be resolved as early in the litigation as possible, preferably prior to broad discovery, we also have cautioned that it is generally inappropriate for a district court to grant a [] motion to dismiss on the basis of qualified immunity." (internal quotation marks and citation omitted)). Even if the underlying search warrant was based on probable cause, the Greers have posed factual allegations that the officers violated their clearly established Fourth Amendment right to be free from unreasonably conducted searches. Consequently, the district court did not err in denying the officers' Rule 12(c) motion based on qualified immunity.

**AFFIRMED**.