NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0505n.06

No. 17-4138

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

CHARLES DIPASQUALE,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff-Appellee,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
JAMES HAWKINS,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　Defendant-Appellant.　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)

FILED
Oct 12, 2018
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
SOUTHERN DISTRICT OF
OHIO

BEFORE:  GIBBONS, THAPAR, and LARSEN, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**  In 2015, Charles DiPasquale was indicted with, tried for, and acquitted of auto theft.  After his acquittal, he brought a malicious prosecution claim against his two former business partners and the officer who had been in charge of his criminal investigation, James Hawkins.  DiPasquale alleged that his former business partners had provided false information to Hawkins that was improperly used to initiate criminal proceedings against him.

Hawkins filed a Rule 12(c) motion on the pleadings, asserting both absolute and qualified immunity defenses, which the district court denied.  This determination is now before the court on interlocutory review.  We affirm on the absolute immunity issue applicable to Hawkins's grand jury testimony.  We reverse the determination that the remaining malicious prosecution claim is

sufficiently pled and remand to the district court to consider whether to permit DiPasquale to amend his malicious prosecution claim.

I.

In 2014, Charles DiPasquale, Mark Herres, and Brad Proctor decided to enter into business together reselling used cars.[1] The men laid out their agreement to "form a temporary partnership to explore the possibility of selling used cars" in a written but unsigned document under the title Marco Motor Cars LLC. DE 1, Compl., Page ID 12. The agreement detailed that DiPasquale and Proctor would fund the business, while Herres would be primarily responsible for finding and purchasing cars "on behalf of Marco Motor Cars LLC and only Marco Motor Cars LLC."[2] *Id.* To that end, DiPasquale transferred $10,000 and Proctor transferred $8,000 to the Marco Motor Cars bank account, to which DiPasquale was the sole signatory. The men then withdrew $8,000 from the account to give to Herres to purchase a 1968 Ford Torino, which he ultimately purchased for $7,000. They stored the Torino in a storage facility for which DiPasquale paid rent and utilities.

Although the group's intention had been to restore and then resell the Torino, in September, five months after the purchase, the partnership had made no progress toward the car's restoration, generated no income, and its members were infighting. A frustrated DiPasquale, who was still paying the car's storage costs, moved the Torino to another storage facility and sent an e-mail purporting to terminate the business venture.

On September 19, 2014, Herres reported to the Clay Township, Ohio, Police Department that the Torino had been stolen by his "business partner" DiPasquale, in an attempt to reobtain the

---

[1] The facts will be recited in the light most favorable to DiPasquale. *Crockett v. Cumberland Coll.*, 316 F.3d 571, 578 (6th Cir. 2003) ("In reviewing the denial of qualified immunity, we must accept the undisputed facts and view the evidence in the light most favorable to the plaintiffs.").

[2] It appears that Marco Motor Cars LLC was DiPasquale's previously formed entity, and the written agreement specified he would add Herres and Proctor to the LLC if their venture became successful after six months. The men's business dealings fell apart before this six-month date, and Proctor and Herres were never added.

car. DE 1, Compl., Page ID 3. At that time, however, Herres could not establish ownership of the Torino because the title to the car was unassigned. Although at the time of the Torino's purchase in April the seller properly had endorsed the back of the title certificate, since the sale, Herres had not sought or obtained new title in the name of Marco Motor Cars as agreed (a source of frustration for DiPasquale). And because Herres could not establish title to the Torino, the Clay Township Police refused to act on his complaint at that time.

After leaving the police department that day, Herres assigned title of the Torino to himself and then faxed a copy of the car's title to Clay Township police officer Douglas DeVore, who was handling the case at that time. On October 1, Herres returned to the police station with the title—now in his name—and provided a typewritten statement. At that time, DeVore concluded that Herres's story was "convoluted" and reached out to DiPasquale's attorney. *Id.* at 4. DiPasquale's attorney sent DeVore a copy of the partnership's written agreement, the lease for the storage facility, checks, and other relevant evidence "demonstrating the civil nature of th[e] matter." *Id.* DeVore then concluded that the dispute "had a strong civil 'flavor'" and did not move forward with criminal charges. *Id.*

Later that month, Devore left his position as an investigator, and the dispute was transferred to Clay Township detective James Hawkins. On October 23, 2014, Proctor came to the Clay Township Police department and provided a typewritten statement to Hawkins about the business venture and DiPasquale's purported theft of the Torino. In his statement, Proctor wrote that the men discussed the possibility of "getting into business together" and "join[ing] [DiPasquale's] company Marco Motor Cars" but claimed "[n]o formal business agreement was ever[] executed to date." *Id.* at 16 (Ex. 4, Proctor Statement). Proctor's statement did acknowledge, however, that the Torino was purchased with $8,000 withdrawn from "the Marco Motors business account." *Id.*

3

Unlike DeVore, Hawkins chose to move forward with a criminal case. And, the complaint alleges, in April 2015, "having in his possession the materials gathered by Officer DeVore and the statement of Defendant Proctor," Hawkins "presented the case" to a Montgomery County, Ohio, grand jury. *Id.* at 5. Both Hawkins and Herres testified at the grand-jury hearing. The grand jury ultimately issued a two-count indictment against DiPasquale, charging him with theft of a motor vehicle and receipt of stolen property—both felonies. After a warrant was issued, DiPasquale pled not guilty and was released on bond.

After a bench trial, DiPasquale was found not guilty on all counts. In his verdict, the presiding judge specifically concluded:

> The Court, while precluded as a matter of law from finding Defendant innocent, notes that the evidence adduced herein certainly proves, beyond any reasonable doubt, that Dr. DiPasquale is unquestionably *innocent* of all charges herein and that the machinery of the criminal justice system was launched against him for the sordid purpose of gaining an advantage in what is entirely a civil matter, i.e., a business dispute among disaffected partners.

*Id.* at 17 (Ex. 5, Verdict).

DiPasquale then filed this action in the district court, asserting claims against Herres, Proctor, and Hawkins under 42 U.S.C. § 1983 for malicious prosecution in violation of his rights under the Fourth and Fourteenth Amendments[3] and for civil conspiracy.[4] In his complaint, DiPasquale alleged that Hawkins "made, influenced, and/or participated in the decision to prosecute" without probable cause to believe DiPasquale had committed a criminal offense. *Id.* at 7.

---

[3] The Fourteenth Amendment is only relevant insofar that it applies the Fourth Amendment to the states. *Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999) (malicious prosecution claim arises under the Fourth Amendment even though before 1994, "this circuit analyzed that right as accruing under the Fourteenth rather than the Fourth Amendment").

[4] DiPasquale also sought a finding against Herres that under state law the certificate of title issued for the Torino was improperly issued, and Herres asserted counterclaims against DiPasquale under state law seeking replevin and alleging conversion and fraud—these claims are not at issue in this appeal.

The defendants each filed separate motions under Rule of Civil Procedure 12(c) for judgment on the pleadings, seeking to dismiss DiPasquale's claims. Relevant to this appeal, Hawkins filed a Rule 12(c) motion asserting that DiPasquale had not properly pled § 1983 malicious prosecution or civil conspiracy claims and, moreover, that he was entitled to absolute and/or qualified immunity. The magistrate judge for the district court recommended granting Hawkins's motion as to the civil conspiracy claim but denying it as to the malicious prosecution claim, concluding that DiPasquale's malicious prosecution claim was pled with specificity sufficient to withstand a Rule 12(c) motion, and that, based on the pleadings, the constitutional right allegedly violated was clearly established, making Hawkins's assertion of qualified immunity at this stage of the case without merit. The magistrate judge further concluded that absolute immunity only extended to "claims arising from [Hawkins's] testimony to the grand jury." DE 42, R&R, Page ID 284 n.3. The district court issued a final decision and order adopting the magistrate judge's report and recommendation in full, over Hawkins's objections. Hawkins then filed this appeal.

II.

In this interlocutory appeal, Hawkins alleges that the district court incorrectly rejected his absolute immunity and qualified immunity defenses in denying his Rule 12(c) motion for judgment on the pleadings.

Appellate courts generally only have jurisdiction over the final decisions of district courts, *see* 28 U.S.C. § 1291; however, under the collateral order doctrine, we have jurisdiction to consider "an order rejecting the defense of qualified immunity at either the dismissal stage or the summary-judgment stage," so long as it turns on an issue of law. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc); *see Crockett v. Cumberland Coll.*, 316 F.3d 571, 577–78 (6th Cir. 2003).

Although, unlike qualified immunity, "the denial of a defense of absolute witness immunity generally is not immediately appealable," we have recognized that a district court's denial of a claim of absolute immunity by a testifying police officer on behalf of the state in a criminal prosecution implicates interests "sufficiently akin to those implicated by the denial of public official immunity" to allow interlocutory review. *Moldowan v. City of Warren*, 578 F.3d 351, 371–72 (6th Cir. 2009); *see also Rodriguez v. City of Cleveland*, 439 F. App'x 433, 455 (6th Cir. 2011). Therefore, we have jurisdiction in the instant appeal to review the district court's denial of Hawkins's qualified and absolute immunity claims.

A.

Hawkins first alleges that the district court erred in concluding that he is not absolutely immune from this malicious prosecution suit. The district court adopted the magistrate judge's conclusion that Hawkins was entitled to absolute immunity with regard to claims arising from his testimony to the grand jury but that absolute immunity did not bar the malicious prosecution suit based on DiPasquale's allegation that "Hawkins acted recklessly when setting the prosecution in motion based upon the allegedly false statements of Proctor and Herres." DE 42, R&R, Page ID 284. We review *de novo* the legal question whether absolute immunity protects a defendant from § 1983 liability. *See Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006).

Grand-jury witnesses enjoy absolute immunity from suit based on their grand-jury testimony. *See Rehberg v. Paulk*, 566 U.S. 356, 369 (2012). Hawkins argues that here the district court improperly found "that an exception applied to remove Detective Hawkins'[s] entitlement to absolute immunity, based on *King v. Harwood*," claiming *King* represents a narrow "exception to the general rule of absolute immunity for grand jury testimony." CA6 R. 14, Appellant Br., at 17–18. But *King* does not represent an exception to absolute immunity for claims based on grand-

jury testimony—indeed, it reaffirms that "absolute immunity is to be afforded to *all* grand-jury witnesses, even law-enforcement officers who have 'conspired to present false testimony.'" *King v. Harwood*, 852 F.3d 568, 584 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 640 (2018) (quoting *Rehberg*, 566 U.S. at 369).[5] The complaint before us adequately alleges only a claim based on Hawkins's grand jury testimony, and that claim is barred by absolute immunity.

DiPasquale argues that he also asserts a malicious prosecution claim. *King* recognizes that there is a "thin but conspicuous line between, on the one hand, law-enforcement officers who only provide grand-jury testimony . . . and, on the other hand, law-enforcement officers who either (1) 'set the wheels of government in motion by instigating a legal action,' or (2) 'falsify affidavits' or 'fabricate evidence concerning an unsolved crime.'" *Id.* (citations omitted) (quoting *Wyatt v. Cole*, 504 U.S. 158, 164–65 (1992) and *Rehberg*, 566 U.S. at 370 n.1).

Hawkins claims that "DiPasquale never alleges any act by Detective Hawkins 'prior to' or 'independent of' his grand-jury testimony," CA6 R. 14, Appellant Br., at 19, but this is not exactly the case. Although the complaint does allege that Hawkins's grand-jury testimony was "false, materially incomplete, and/or in reckless disregard of the truth," it also alleges that "Hawkins made, influenced, and/or participated in the decision to prosecute" when "[t]here was a lack of probable cause for the criminal prosecution." DE 1, Compl., Page ID 7. The complaint also contains factual allegations about Hawkins's role in the investigation independent of his grand-jury testimony, including his decision to pursue a criminal case. Moreover, in assessing DiPasquale's malicious prosecution claim, the magistrate judge properly considered only

---

[5] Hawkins also provides an extensive discussion of and analogy to *Sanders v. Jones*, 845 F.3d 721 (6th Cir. 2017). But in addition to failing to support his absolute immunity argument, the judgment in *Sanders* was vacated by the Supreme Court shortly after Hawkins filed his brief in this appeal. *See Sanders v. Jones*, 138 S. Ct. 640 (2018) (vacating and remanding to the Sixth Circuit for "further consideration in light of *Manuel v. Joliet*, [137 S. Ct. 911 (2017)]"). This court has since issued an opinion in the remanded case, holding that the officer was not entitled to absolute immunity. *See Sanders v. Jones*, No. 15-6384, 2018 WL 1616961, at *1 (6th Cir. Apr. 4, 2018).

Hawkins's role in "setting the prosecution in motion based upon the allegedly false statements of Procter and Herres" and did not consider his testimony before the grand jury. DE 42, R&R, Page ID 284; *see King*, 852 F.3d at 584.

### B.

The standard of review for denial of a Rule 12(c) motion for judgment on the pleadings is "the same as that used for motions to dismiss pursuant to Rule 12(b)(6)." *Greer v. City of Highland Park*, 884 F.3d 310, 314 (6th Cir. 2018). That is: "the allegations must state a plausible claim for relief." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). When a defendant appeals denial of a Rule 12(c) motion for judgment on the pleadings based on qualified immunity, we review "*de novo* whether the complaint alleges violation of a clearly established constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 562 (6th Cir. 2011).

This court recognizes "a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment" based on a defendant officer's "wrongful investigation, prosecution, conviction, and incarceration" of a plaintiff. *Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006). To succeed on such a claim, a plaintiff must establish that (1) a criminal prosecution was initiated against the plaintiff and that the defendant "made, influenced, or participated in the prosecution decision"; (2) "there was no probable cause to support the charges"; (3) as a result of the legal proceedings, the plaintiff suffered a deprivation of liberty "apart from the initial seizure"; and (4) the criminal proceedings ended in the plaintiff's favor. *Miller*, 866 F.3d at 389 (quoting *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)). Here, DiPasquale's complaint is deficient as to the first and second elements.

We turn first to the second element of probable cause. Normally, "an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable

cause." *Barnes*, 449 F.3d at 716; *see King*, 852 F.3d at 587. However, in *King*, we recognized an exception to this general principle, reasoning that

> where (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass conspiring to commit perjury before the grand jury), the presumption that the grand-jury indictment is evidence of probable cause is rebuttable and not conclusive.

*King*, 852 F.3d at 587–88; *cf. Manuel v. City of Joliet, Ill*, 137 S. Ct. 911, 920 n.8 (2017) (rejecting the notion that a grand jury indictment "expunge[s]" a Fourth amendment claim for unlawful pretrial detention when "the proceeding is tainted . . . by fabricated evidence"). We have recognized that this exception similarly applies when an officer has "misled the prosecutor, as well as the grand jury, through his deficient and reckless investigation and the critical omission of material evidence." *Jones v. Clark County*, 690 F. App'x 334, 336 (6th Cir. 2017); *see also Sanders v. Jones*, 15-6384, 2018 WL 1616961, at \*2 (6th Cir. Apr. 4, 2018).

Here, the district court found that DiPasquale's malicious prosecution claim could proceed because this exception to the presumption of probable cause applied. The district court adopted the magistrate judge's reasoning that it was plausible that "Hawkins acted recklessly when setting the prosecution in motion based upon the allegedly false statements of Procter and Herres" because "[t]he falsity of such statements [was] allegedly readily apparent from information provided by DiPasquale to the Clay Township Police." DE 42, R&R, Page ID 284. The relevant portion of DiPasquale's complaint, however, never alleges that Hawkins knew or should have known that the statements of Proctor and Herres were false. Thus, even if we were to conclude that knowingly or recklessly relying on false statements is sufficiently akin to "knowingly or recklessly mak[ing] false statements" to overcome the probable-cause presumption, *King*, 852 F.3d at 587–88, we must

still dismiss the case because DiPasquale's complaint makes no such claim. Indeed, the only allegation regarding Hawkins's knowledge in the complaint is under the civil conspiracy cause of action, which alleges that Hawkins knew the title was wrongly in Herres's name and that he knew "the matter was a civil one over which law enforcement had no jurisdiction to act." DE 1, Compl., Page ID 8. But the civil conspiracy claim was dismissed, and the complaint does not incorporate these allegations into the malicious prosecution cause of action.

This is not to say that that there are no facts in the complaint that could support that Hawkins knew or should have known that the men's accounts were false—for example, the relevant portion of the complaint alleges that DiPasquale provided DeVore with the partnership agreement, lease for the storage facility, checks "and other evidence demonstrating the civil nature of this matter," and that Hawkins had these in his possession when he "presented the case to a Montgomery County Grand Jury." *Id.* at 4–5. And the partnership agreement, attached to the complaint, outlined the men's business venture and specified that Herres was expected to acquire cars "on behalf of Marco Motor Cars LLC and only Marco Motor Cars LLC." *Id.* 12. Moreover, Proctor's written statement to the Clay Township police after Hawkins had taken over the investigation, also attached as an exhibit to the complaint, acknowledges there was a business relationship among Proctor, Herres, and DiPasquale to buy and fix up cars and that the Torino was purchased with funds withdrawn from the Marco Motor Cars business account. These facts might have some tendency to support an allegation that Hawkins knowingly or recklessly acted on false information—but the complaint makes no such an allegation, and it is not the duty of the court to create a claim that a plaintiff has not spelled out in his pleading. *See Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). DiPasquale, therefore, has failed to state a plausible

10

malicious prosecution claim, as he cannot overcome the probable-cause presumption of the grand-jury indictment. *See Iqbal*, 556 U.S. at 678; *King*, 852 F.3d at 587–88.

With regard to the first element, DiPasquale makes a conclusory assertion that Hawkins "made, influenced, and/or participated in the decision to prosecute." There is no amplification of this conclusion in the complaint.[6] *Iqbal* teaches that this is insufficient:

> The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell v. Twombly*, 550 U.S. 544, 555–57, 570) (1986)). Dispaquale's allegations mirror those *Iqbal* deems insufficient.

Based on these deficiencies in the allegations regarding the first and second elements of the malicious prosecution cause of action, the entire complaint is subject to dismissal. Deficiencies in a complaint may, however, may be cured by amendment, and Rule 15(a)(2) instructs that the district court "freely give leave" to amend when "justice so requires." Fed. R. Civ. P. 15(a)(2). And DiPasquale in a footnote in both his objections to the magistrate judge's report and recommendation and in his motion for reconsideration, requested leave to amend his complaint should the district court conclude the allegations were insufficiently pled. The district court did not rule on this request prior to our interlocutory review.[7] Although the grant or denial of leave to amend is a matter within the discretion of the trial court, *Estes v. Ky. Utils. Co.*, 636 F.2d 1131,

---

[6] If the complaint intends to identify Hawkins's grand jury testimony as the sole act of participation in the decision to prosecute, then the entire claim is barred by absolute immunity and subject to dismissal.

[7] The matter is currently stayed in the district court, pending resolution of a companion case currently pending in the Ohio Second District Court of Appeals.

1133 (6th Cir. 1980), we note that DiPasquale's complaint, though technically deficient, does contain some factual allegations that might support a malicious prosecution claim. It is, however, up to the district court to determine whether DiPasquale's requests represent an adequate motion under the federal and local rules and, if so, whether the interests of justice indicate leave to amend should be granted in this case.[8] *See Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014); *see also* S.D. Ohio Civ. R. 7.3.

### III.

We therefore affirm the dismissal of the claim regarding grand jury testimony but reverse the determination that the remaining malicious prosecution claim is sufficiently pled and remand to the district court for consideration of DiPasquale's request for leave to amend his complaint.

---

[8] We note also that Federal Rule of Civil Procedure 15 permits a party to amend its pleadings with the court's leave at any time, leaving open the possibility that DiPasquale could seek leave to file another motion to amend.