RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0138p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JOSEPH D. WATSON,

      *Plaintiff-Appellant*,

*v.*

PATRICK PEARSON, et al.,

      *Defendants*,

DAVID MENDEZ and RON TALBOTT, in their official and individual capacities; BLOUNT COUNTY SHERIFF'S OFFICE; BLOUNT COUNTY, TENNESSEE,

      *Defendants-Appellees*.

> No. 18-6047

---

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:14-cv-00595—Thomas A. Varlan, District Judge.

Argued:  May 1, 2019

Decided and Filed:  June 28, 2019

Before:  CLAY, GILMAN, and KETHLEDGE, Circuit Judges.

---

## COUNSEL

**ARGUED:**  Tillman J. Breckenridge, PIERCE BAINBRIDGE LLP, Washington, D.C., Evan D. Lewis, WILLIAM & MARY APPELLATE AND SUPREME COURT CLINIC, Williamsburg, Virginia, for Appellant.  Peako Jenkins, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees Mendez and Talbott. **ON BRIEF:**  Tillman J. Breckenridge, PIERCE BAINBRIDGE LLP, Washington, D.C., Evan D. Lewis, WILLIAM & MARY APPELLATE AND SUPREME COURT CLINIC, Williamsburg, Virginia, for Appellant.  Peako Jenkins, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees Mendez and Talbott.  Craig L. Garrett, Maryville, Tennessee, for Blount County Appellees.

GILMAN, J., delivered the opinion of the court in which CLAY, J., joined. KETHLEDGE, J. (pg. 10), delivered a separate dissenting opinion.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge.   Joseph D. Watson filed an action under 42 U.S.C. § 1983, alleging that law-enforcement officers violated his Fourth Amendment rights by engaging in a warrantless search of the curtilage surrounding the residence where he was found.   The district court agreed that the officers had violated Watson's Fourth Amendment rights, but held that those rights were not clearly established at the time of the officers' actions. Accordingly, the court granted summary judgment in favor of the officers based on the doctrine of qualified immunity.   Watson then filed this timely appeal.   For the reasons set forth below, we **REVERSE** the district court's grant of summary judgment and **REMAND** the case for further proceedings consistent with this opinion.

## I.  INTRODUCTION

In December 2013, law-enforcement officers Patrick Pearson and David Mendez attempted to serve a civil levy on Watson at his last-known address.   Pearson and Mendez knocked on the front door of Watson's presumed residence for approximately twenty minutes. Another law-enforcement officer, Ron Talbott, arrived during this time.

Watson finally exited the residence.   The officers explained that they were serving a civil levy on him.   In response, Watson said that the house belonged to his girlfriend, that his girlfriend was still inside, and that he did not live at the house.   (A subsequent filing clarified that Watson rented the house with his girlfriend.)   Watson also said that he could not get back into the house because he had left his keys inside.   The officers then asked Watson whether he had anything of value on him against which they could levy.   Watson produced change from his pocket.   At that point, the officers told Watson that he was free to leave.

After Watson left, the officers continued to knock on the front door and turned the knob to see if the door was locked.   It was.   They then walked around the exterior of the house to, as

they described it, "look for items that could possibly be levied." While walking around the side of the house, the officers smelled marijuana coming from the crawl-space vent. In addition, the officers claim that they saw partially smoked marijuana joints outside. Watson contends that what the officers actually saw were hand-rolled cigarettes. These "joints" were never tested to determine whether they did, in fact, contain marijuana.

The officers obtained a search warrant for the residence later that day based on the smell of marijuana, the apparent presence of partially smoked marijuana joints, previous complaints about suspicious activity at the residence, Watson's criminal record, and a tip from a confidential informant. Upon executing the warrant, the officers located a large amount of marijuana inside the residence along with other evidence indicative of the sale and use of marijuana.

The state of Tennessee subsequently instituted criminal proceedings against Watson. Watson moved to suppress the evidence derived from the officers' search of the residence, claiming that they had violated his Fourth Amendment rights. The state trial court granted the motion and the Tennessee Court of Criminal Appeals affirmed. *State v. Watson*, No. E2016–00105–CCA–R3–CD, 2017 WL 1324183, at *8 (Tenn. Crim. App. Apr. 10, 2017).

Watson contemporaneously brought his own action under 42 U.S.C. § 1983, alleging that the officers, the 5th Judicial District, Blount County, and the Blount County Sherriff's Office had violated his Fourth Amendment rights. The claims against Officer Pearson were dismissed by stipulation between the parties. Subsequently, the district court granted summary judgment in favor of the remaining defendants. Although the court agreed that Watson's Fourth Amendment rights had been violated, it held that Officers Mendez and Talbott were entitled to qualified immunity because those rights were not clearly established when the incident occurred. The court determined that "a reasonable officer could have thought that [Watson] did, in fact, disclaim his privacy interest in the later-searched residence."

Watson does not contest the district court's grant of summary judgment in favor of the 5th Judicial Task Force, and he does not make any argument on appeal as to Blount County or the Blount County Sherriff's Office. *See Buziashvili v. Inman*, 106 F.3d 709, 719 (6th Cir. 1997)

(stating that an appeals court will not consider a claim on which the party makes no argument). As a result, the issues remaining on appeal relate only to Officers Mendez and Talbott.

## II.  ANALYSIS

### A.  Standard of review

"We review the district court's grant of summary judgment on qualified immunity grounds de novo." *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013).  Summary judgment is appropriate if the evidence before the court demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).  In considering a motion for summary judgment, we must draw all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.  Qualified immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  To determine whether an officer is entitled to qualified immunity, we evaluate two independent prongs: whether the officer's conduct violated a constitutional right, and whether that right was clearly established at the time of the incident.  *Id.* at 232.

#### 1.  *The officers violated Watson's Fourth Amendment rights.*

In evaluating the first prong of the qualified-immunity analysis, we must determine whether the officers violated Watson's Fourth Amendment rights. *See Greer v. City of Highland Park*, 884 F.3d 310, 314–15 (6th Cir. 2018).  The district court concluded that the officers did so

by searching the curtilage of the residence without a warrant and without a valid excuse for not obtaining one. This conclusion is not disputed by the officers.

"[T]he Fourth Amendment provides a potent shield against warrantless searches and seizures within the curtilage of a person's home." *Jacob v. Twp. of W. Bloomfield*, 531 F.3d 385, 389 (6th Cir. 2008). A warrantless search of the curtilage violates the Fourth Amendment unless an exception to the warrant requirement applies. *See id.* at 392. In this case, the officers did not have a warrant when they arrived at the residence and entered the curtilage. They argued at the district court level that Watson's statements demonstrated an intent to disclaim his privacy interest in the residence, thereby allowing the officers to treat the house as abandoned under *Abel v. United States*, 362 U.S. 217 (1960), and *State v. Ross*, 49 S.W.3d 833 (Tenn. 2001). The district court rejected this argument, as do we. Watson had just exited the house, stated that his girlfriend lived there, and claimed that he had left his keys to the residence inside. At the very least, Watson communicated that he was an overnight or social guest with a legitimate expectation of privacy in the residence. *See Minnesota v. Olson*, 495 U.S. 91, 96–97 (1990) (concluding that overnight guests have a legitimate expectation of privacy where they stay).

In addition, the officers do not cite any cases that extend the abandonment exception to *inhabited* residences. *Abel* and its progeny have confined this exception to vacated hotel rooms, apartments after an eviction, and movable property. *See, e.g.*, *Abel*, 362 U.S. at 241 (holding that an individual has no privacy interest in abandoned property, such as items thrown away in a vacated hotel-room wastebasket); *United States v. Tolbert*, 692 F.2d 1041, 1044–45 (6th Cir. 1982) (concluding that a woman possessed no reasonable expectancy of privacy in her suitcase when she claimed that it was not hers); *United States v. Roberts*, 465 F.2d 1373, 1375 (6th Cir. 1972) (holding that a tenant did not have a privacy interest in an apartment after being evicted by the landlord), *overruled on other grounds by United States v. Stone*, 748 F.2d 361 (6th Cir. 1984); *State v. Ross*, 49 S.W.3d 833, 842 (Tenn. 2001) (concluding that a man disclaimed his privacy interest in a hotel room when he stated that the hotel key in his sock belonged to someone else).

The abandonment exception, moreover, has never been applied to residences that have been left unattended for only a short period of time. Accordingly, we agree with the district

court's conclusion that the officers violated Watson's constitutional rights by searching the curtilage of the home without a warrant.

### 2. Watson's rights were clearly established when the search occurred.

This brings us to the second prong of the qualified-immunity analysis—whether Watson's rights were clearly established at the time of the constitutional violation. *See Greer*, 884 F.3d at 315. The district court concluded that the officers were entitled to qualified immunity because a reasonable officer, under the precedent existing in December 2013, could have reasonably thought that Watson had disclaimed his privacy interest in the residence, thus allowing the officers to treat the property as abandoned and not subject to Fourth Amendment protection. In addition, Officers Mendez and Talbott argue that the scope of their implied license to enter and remain on the curtilage was not clearly established when the violation occurred.

### a. Under clearly established law, Watson did not disclaim his privacy interest in the residence, and the property was not abandoned.

The officers argue that they could have reasonably believed that Watson had disclaimed his privacy interest in the residence, thus allowing them to treat the property as abandoned. To support this argument, they cite cases where individuals disclaimed privacy interests in abandoned hotel rooms, bags, or moveable property. *See, e.g.*, *Abel*, 362 U.S. at 241; *Tolbert*, 692 F.2d at 1044–45; *Ross*, 49 S.W.3d at 842. But these cases do not support the officers' position. Watson stated that his girlfriend lived in the house and that he had left his keys inside. As explained above, Watson reasonably communicated that he was at least an overnight or social guest. This would afford him a legitimate expectation of privacy in the residence. *See Olson*, 495 U.S. at 96–97. In addition, Watson had just exited the house and stated that his girlfriend was still inside. The residence was therefore clearly not abandoned. No officer could have reasonably believed that Watson disclaimed his privacy interest in the residence or that the property was abandoned by its owners or tenants.

### b. Under clearly established law, the officers exceeded the scope of their implied license to enter and remain on the curtilage.

The officers also contend that their warrantless intrusion into the curtilage was not prohibited by clearly established law when the search occurred in December 2013. They claim that a reasonable officer could have believed that the "knock and talk" exception, as discussed in *Hardesty v. Hamburg Township*, 461 F.3d 646 (6th Cir. 2006), extended to their actions.

The Fourth Amendment protects the curtilage of the house, *Oliver v. United States*, 466 U.S. 170, 180 (1984), and warrantless searches of the curtilage "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted). One of these exceptions is the "knock and talk" rule, which allows an officer without a warrant to enter the curtilage and knock on the front door in an attempt to speak with the occupants or to ask for consent to search the premises. *See, e.g.*, *Florida v. Jardines*, 569 U.S. 1, 8 (2013); *United States v. Thomas*, 430 F.3d 274, 277 (6th Cir. 2005).

In September 2006, this court concluded that the "knock and talk" exception permitted officers to proceed around a house and knock on the back door if they have reason to believe that an individual is inside the house and no one answered the front door. *Hardesty*, 461 F.3d at 654. This court reiterated that position in *Turk v. Comerford*, 488 F. App'x 933, 947 (6th Cir. 2012). But in March 2013, the Supreme Court clarified in *Jardines* that a police officer without a warrant is limited to "approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Jardines*, 569 U.S. at 8. The Court held that "a police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen would do.'" *Id.* (quoting *Kentucky v. King*, 563 U.S. 452, 469 (2011)). And in September 2018, the Sixth Circuit explicitly stated that *Jardines* had overturned *Hardesty* and *Turk*. *Morgan v. Fairfield County*, 903 F.3d 553, 565 (6th Cir. 2018).

The officers argue, however, that *Jardines* was not understood in 2013 to have clearly superseded *Hardesty* and *Turk*. They claim that the scope of the "knock and talk" exception was not clearly established until the Sixth Circuit decided *Morgan* in September 2018. The officers

rely on *Brennan v. Dawson*, 752 F. App'x 276 (6th Cir. 2018), an unpublished case concluding that *Hardesty* was good law until *Morgan* was decided. *Id.* at 285. *Brennan* posited that *Jardines* did not clearly govern situations in which a police officer had reason to believe that someone was inside the home and the officer entered the curtilage in an attempt to contact that person. *Id.*

We are not persuaded. First, *Jardines* clearly rejected the kind of intrusion into the curtilage that *Hardesty* had permitted. A plain reading of *Jardines* does not allow an officer to intrude into the curtilage by walking around the house. *See Jardines*, 569 U.S. at 8. Although *Brennan* interprets *Jardines* differently, it is an unpublished case and clearly conflicts with then-existing Supreme Court caselaw. We are not bound by *Brennan*. *See United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007) ("As an unpublished decision, [it] is not precedentially binding under the doctrine of stare decisis, but is considered by us for its persuasive value only.").

Moreover, even if *Jardines* was not understood in 2013 to have overturned *Hardesty* and *Turk*, those cases do not permit an officer to enter the curtilage *to engage in a search*. *Hardesty* and *Turk* at most held that the scope of the "knock and talk" investigative technique permitted officers to walk to the backyard of a residence in an effort to communicate with individuals thought to be inside. Those cases did not permit officers to enter the curtilage with the intent of performing a search.

In the present case, the officers were not trying to contact anyone inside the residence when they entered the curtilage. According to the officers' own affidavits, they "walked around the exterior of the property to look for items that could possibly be levied." We acknowledge the officers' current argument that they "presumably" could have been seeking to contact Watson's girlfriend so that she could "assist[] them in identifying items that belonged to [Watson]." But this version of the facts is directly contradicted by their affidavits and seriously undermines their abandonment argument. The "knock and talk" exception discussed in *Hardesty* and *Turk* therefore could not have been extended to permit the officers' purposeful search of the curtilage.

In sum, the officers are not entitled to qualified immunity because they violated Watson's constitutional rights and because those rights were clearly established when the incident occurred. The district court accordingly erred by granting summary judgment in favor of the officers based on qualified immunity.

## III. CONCLUSION

For all the reasons set forth above, we **REVERSE** the district court's grant of summary judgment and **REMAND** the case for further proceedings consistent with this opinion.

————————————

**DISSENT**

————————————

KETHLEDGE, Circuit Judge, dissenting.  I see nothing in the relevant facts or law that would have made obvious to the officers that Watson had a privacy interest in the house. Watson had just told the officers that he neither owned nor lived there.  The majority asserts that "[a]t the very least, Watson communicated that he was an overnight guest or social guest[.]" Maj. Op. at 5.  But neither of those things were true once Watson left the scene.   Nor does Watson identify any case that would have made clear to the officers that Watson retained some privacy interest in the property based on his vague reference to "his keys inside."  I therefore respectfully dissent.