RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0093p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

JIRIES ABU-JOUDEH,

*Plaintiff-Appellant*,

*v.*

HEATHER SCHNEIDER; MICHAEL EDWARDS; PATRICK LEAVECK; BEST RECOVERY SERVICES, LLC,

*Defendants*,

SCOTT SHEETS,

*Defendant-Appellee*.

> No. 19-1337

───────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:16-cv-13893—Robert H. Cleland, District Judge.

Argued: January 31, 2020

Decided and Filed: March 27, 2020

Before: MERRITT, CLAY, and GRIFFIN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Eric A. Ladasz, ERIC A. LADASZ, P.C., Dearborn, Michigan, for Appellant. James E. Tamm, O'CONNOR, DEGRAZIA, TAMM & O'CONNOR, P.C., Bloomfield Hills, Michigan, for Appellee. **ON BRIEF:** Eric A. Ladasz, ERIC A. LADASZ, P.C., Dearborn, Michigan, for Appellant. James E. Tamm, Julie McCann O'Connor, O'CONNOR, DEGRAZIA, TAMM & O'CONNOR, P.C., Bloomfield Hills, Michigan, for Appellee. **ON BRIEF AND MOTION TO DISMISS PARTIES TO APPEAL:** Alexander D. Bommarito, BOMMARITO LAW OFFICES, PLLC, Freeland, Michigan, for Best Recovery Defendants.

---

**OPINION**

---

CLAY, Circuit Judge.  Plaintiff Jiries Abu-Joudeh sued police officer Scott Sheets, along with several others, under 42 U.S.C. § 1983 for breaking into his garage during the repossession of Abu-Joudeh's vehicle.  Abu-Joudeh claims this violated his Fourth Amendment right to be free from unreasonable searches and seizures.  Sheets—the only defendant left on appeal— argued that Abu-Joudeh failed to show that Sheets was the police officer who opened his garage. While the magistrate judge disagreed and recommended that the case proceed to trial, the district court sided with Sheets and granted summary judgment in his favor.

On appeal, Abu-Joudeh moves to supplement the record, asking this Court to take judicial notice of several documents he never submitted to the district court.  While we deny Abu-Joudeh's motion, the record already includes evidence suggesting that Sheets was the officer who broke into his garage.  Because this evidence creates a genuine issue of material fact, the district court erred in granting Sheets summary judgment.  Accordingly, we reverse and remand this case for further proceedings.

## I.  BACKGROUND

### A.  The Arrest and Repossession

Plaintiff Jiries Abu-Joudeh lives in Allenton, Michigan, with his wife Yasmeen and three sons.  On November 20, 2014, Michael Edwards and Patrick Leaveck—two repossession agents with Best Recovery Services, LLC—came to the Abu-Joudehs' home to repossess their car.  An altercation ensued.  According to Yasmeen, one of the agents pushed her and later shoved Jiries into her.  But the repossession agents say that Jiries asked Yasmeen to get him a gun, and then hit her when she refused.  Whatever happened, the repossession agents called the police, and the Abu-Joudehs moved their car into the garage and shut the door.

Police officers soon arrived at the Abu-Joudehs', specifically Chief Heather Schneider of the Capac Police Department and Trooper Rick Sebring of the Michigan State Police.

Yasmeen let the officers into the house and denied that Jiries hit her. But after a scuffle with Schneider, Jiries was arrested for assault.

Following the arrest, two more police cars arrived at the scene, both driven by male officers. One of these officers—whom Yasmeen refers to as the "third officer" to arrive—entered the house and began assisting Schneider and Sebring. (Yasmeen Dep., R. 77-1 at PageID at #876–77.)

While inside the house, Yasmeen says that the third officer was standing by her and kept her seated on the couch, ordering her to "[s]it down" and repeatedly telling her to "shut up" when she tried to get Jiries his medication. (*Id.* at #877.) Of particular relevance to this appeal, Schneider's police report suggests that this third officer was Chief Scott Sheets of the Memphis Police Department. (*See* Police Report, R. 55-8 at PageID #410 ("Once Chief Sheets showed up I advised him to watch Yasmeen so she didn't get up and interfere.").) Yasmeen also described the third officer as being mostly bald with short blond or dirty-blond hair, medium height and build, relatively young, and wearing a blue uniform. On the other hand, the fourth officer had dark or black hair.

According to Yasmeen, the third officer spoke with the repossession agents and then told Schneider and Sebring that the garage was locked. After that, the third officer—joined by the two repossession agents—took a metal bar and attempted to pry open the main electric door to the garage, presumably to help the agents take the Abu-Joudehs' truck. When this attempt failed, they went around to the side door, which one of them opened, allowing the trio to enter the garage. While Yasmeen did not see which of the three actually opened the side door, Leaveck testified that it was a police officer who let them into the garage:

> Q. How did you get into the garage?
> A. We were let into the garage.
> Q. By who?
> A. By one of the police officers.
> Q. Which police officer?
> A. I don't know. He didn't give his name. He basically walked out of the house, walked into the barn, opened the large door, walked out and said, is this the

vehicle you guys are here to get, and I said yes, sir.  He said, load it up, get it out of here.

(Leaveck Dep., R. 55-7 at PageID #405.)  Edwards and Leaveck then loaded the vehicle onto their tow truck and hauled it away.

### B.  The District Court's Summary Judgment Order

In November 2016, just under two years after the repossession and arrest, Jiries Abu-Joudeh filed suit in federal court.  While Abu-Joudeh initially named several police officers and the repossession agents as defendants, the only relevant claim for this appeal is that against Scott Sheets for allegedly breaking into Abu-Joudeh's garage, thereby violating his Fourth Amendment right against unreasonable searches and seizures.[1]

After the parties conducted discovery, Sheets moved for summary judgment, arguing that Abu-Joudeh failed to present "any evidence" that Sheets "unlawfully enter[ed] Plaintiff's garage."  (Mot. for Summ. J., R. 55 at PageID #357 (emphasis omitted).)  Inexplicably, Abu-Joudeh's counsel never deposed Sheets or sent him any discovery requests, and so Sheets submitted a one-page affidavit saying he "did not open Plaintiff's garage without consent, did not enter Plaintiff's garage without consent, and did not enter Plaintiff's vehicle or participate in its repossession."  (Sheets Aff., R. 55-10 at PageID #431.)[2]  Sheets also pointed to Yasmeen's inability to tell whether it was the "third officer" or one of the repossession agents who actually broke into the garage, and the fact that Yasmeen did not recognize Scott Sheets's name when asked at her deposition.  However, while characterizing these documents as supporting summary judgment, Sheets also pointed to the police report noting his presence at the scene and reflecting Schneider's request for Sheets to watch Yasmeen, as well Leaveck's testimony that it was a police officer who let the repossession agents into the garage.

---

[1]In the district court, Abu-Joudeh voluntarily dismissed his claims against Heather Schneider and Rick Sebring, and never challenged the district court's grant of summary judgment to the repossession agents and their company, leaving Sheets as the only remaining defendant.

[2]While Sheets cabins his affidavit to whether he opened or entered the garage "without consent" (Sheets Aff., R. 55-10 at PageID #431), Yasmeen testified that neither she nor Jiries gave anyone permission to enter the garage.

Abu-Joudeh's response, though not a model of clarity, noted that the police report identified Sheets and that Yasmeen provided a physical description of the "third officer" that could allow him to be identified as Sheets. Rather than stop there, Abu-Joudeh also submitted a "Declaration of Yasmeen Abu-Joudeh" identifying Scott Sheets as the third officer. Yasmeen says that she knows this officer was Sheets based on a photograph—apparently a picture of a computer screen showing a news article featuring Sheets—that was attached to her declaration. This "declaration" was unsworn, contained no statement that it was submitted under penalty of perjury, and was electronically signed by typing Yasmeen's name. Sheets's reply brief was dedicated to attacking this declaration as unsworn, unsigned, and in contradiction to Yasmeen's prior deposition testimony. The motion was then referred to a magistrate judge.

The magistrate judge recommended denying Sheets's motion for summary judgment. *Abu-Joudeh v. Schneider* (*Abu-Joudeh I*), No. 16-13893, 2019 WL 2219738, at *4 (E.D. Mich. Jan. 16, 2019), *adopted in part and rejected in part*, 2019 WL 1090746 (E.D. Mich. Mar. 8, 2019). While the magistrate judge held that Yasmeen's declaration was invalid and refused to consider it, *id.* at *2 n.3, she found that the remaining evidence was enough to create a triable issue of fact as to whether Sheets was the officer who opened Abu-Joudeh's garage, *id.* at *2–4. Specifically, the magistrate judge noted that "Yasmeen testified to seeing an officer with a metal bar breaking the lock to the garage," that this was the third officer who arrived at the scene, and that Yasmeen provided a physical description of this third officer. *Id.*[3] But in describing the applicable law, the magistrate judge said that Abu-Joudeh "need not provide specific identifying information [in order] to create a question of fact about whether Sheets was the officer who opened the garage," citing several cases in which this circuit or its district courts denied summary judgment even without a clear identification of which officer committed the alleged constitutional violation. *Id.* at *3.

Sheets objected to the magistrate judge's recommendation. On the facts, Sheets claimed that the magistrate judge erred in saying Yasmeen "testified to seeing an officer with a metal bar breaking the lock to the garage," since she only saw the officer prying at the main electric door,

---

[3]According to the magistrate judge, Sheets never argued "that he does not fit that description." *Abu-Joudeh I*, 2019 WL 2219738, at *3.

and did not see who actually broke the lock on the side door. (Objs. to R. & R., R. 77 at PageID #855–56 (quoting *Abu-Joudeh I*, 2019 WL 2219738, at \*2).)[4] Sheets also said the magistrate judge wrongly found that "Leaveck corroborated the testimony of Mrs. Abu-Joudeh to support the allegation that Officer Sheets was the officer who opened the garage." (*Id.* at #856.)[5] Finally, Sheets claimed that the magistrate judge erred on the law, arguing that Abu-Joudeh had to affirmatively show that Sheets was the one who broke into the garage.

The district judge agreed with Sheets, rejecting the report and recommendation and granting him summary judgment. *Abu-Joudeh v. Schneider* (*Abu-Joudeh II*), No. 16-13893, 2019 WL 1090746, at \*2, \*4 (E.D. Mich. Mar. 8, 2019). First, the court agreed with Sheets's factual objections, noting that Yasmeen "could not state which individual—the third officer or one of the tow truck drivers—actually broke the [side door] lock," and that neither Yasmeen nor Leaveck "conclusively stated that the third officer opened the garage." *Id.* at \*2. The district court also disagreed with the magistrate judge's statement of the law, distinguishing the excessive-force cases cited in the report and recommendation and finding that Abu-Joudeh needed to affirmatively identify which officer opened the garage. *Id.* at \*2–3. And while the district court never discussed the other evidence relied on by the magistrate judge (such as Yasmeen's physical description of the officer who opened the garage), it described the evidence that Sheets was the "third officer" as merely "speculation and conjecture." *Id.* at \*3. Abu-Joudeh then appealed.

### C. Proceedings on Appeal

On appeal, the sole issue Abu-Joudeh raises is whether he presented a triable issue of fact as to the identity of the officer who opened his garage. But rather than limit himself to the record below, Abu-Joudeh filed a "Motion for Judicial Notice" that attempts to introduce additional documents never presented to the district court. The first document is the Michigan State Police

---

[4]As discussed below, this distinction is ultimately irrelevant. Based on Yasmeen's testimony alone, a reasonable juror could infer that the third officer was the one who broke the lock on the side door, since he was the one who first tried to pry open the electric garage door.

[5]In reality, the magistrate judge only said that "Leaveck corroborated Yasmeen's testimony that a male officer who was not a state trooper opened the garage," which left "Sheets and the unknown fourth officer as the possible culprits." *Abu-Joudeh I*, 2019 WL 2219738, at \*3.

equivalent to the Capac Police Department report already included in the record below, which includes additional references to Sheets. The second document contains additional pages from Jiries Abu-Joudeh's deposition transcript that do not appear relevant to this appeal. Sheets opposes the motion, arguing that Abu-Joudeh is merely using "judicial notice" as a ruse to expand the record and present evidence never shown to the district court.

## II.  MOTION FOR JUDICIAL NOTICE

Before addressing the merits of his appeal, Abu-Joudeh asks us to take judicial notice of several documents he failed to file in the district court. This misunderstands the purpose of judicial notice because what Abu-Joudeh really seeks is to supplement the record on appeal. And because Abu-Joudeh cannot meet the requirements for such an expansion of the record, his motion is denied.

While parties must normally submit admissible evidence to support the factual allegations in their case, sometimes a fact is so obvious that federal courts will allow a shortcut around these procedures. This shortcut—judicial notice—is governed by Federal Rule of Evidence 201, which allows courts to "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). In a civil case like this one, when a court takes judicial notice, the noticed fact is presented to the jury, which is required to accept it "as conclusive." Fed. R. Evid. 201(f). And the rules allow courts to take judicial notice "at any stage of the proceeding," Fed. R. Evid. 201(d), including on appeal, *United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012).

But courts do not take judicial notice of documents, they take judicial notice of facts. *See, e.g.*, *id.* at 834–35 (taking judicial notice of facts regarding the defendant's criminal history that were found in court records from other proceedings); *Davis v. City of Clarksville*, 492 F. App'x 572, 578 (6th Cir. 2012) (discussing this distinction). The existence of a document could be such a fact, but only if the other requirements of Rule 201 are met. Here, Abu-Joudeh goes even further, asking us to take judicial notice of the contents of these documents for the truth of

the matters they assert. This is no different than moving to supplement the record; indeed, Abu-Joudeh says in his motion that he "seeks to include two documents into the record." (Mot. for Judicial Notice at 2); *see also Lopreato v. Select Specialty Hosp.–N. Ky.*, 640 F. App'x 438, 440 n.2 (6th Cir. 2016) (construing a motion to take judicial notice as a motion to supplement the record); *Davis*, 492 F. App'x at 578 (same); *Molnar v. Care House*, 359 F. App'x 623, 625 (6th Cir. 2009) (same).

Viewed properly as a request to supplement the record, Abu-Joudeh's motion must be denied. While Federal Rule of Appellate Procedure 10(e)(2) allows for the correction of "omissions from or misstatements in the record," it does not allow parties "to introduce new evidence in the court of appeals." *United States v. Murdock*, 398 F.3d 491, 500 (6th Cir. 2005) (quoting *United States v. Smith*, 344 F.3d 479, 486 (6th Cir. 2003)); *accord, e.g., Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 376–77 (6th Cir. 2015); *Molnar*, 359 F. App'x at 625; *S&E Shipping Corp. v. Chesapeake & Ohio Ry. Co.*, 678 F.2d 636, 641 (6th Cir. 1982). Yet that is exactly what Abu-Joudeh looks to do. And while this Court could still permit an expansion of the record under equitable principles, *see, e.g., Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 476–78 (6th Cir. 2008); *Murdock*, 398 F.3d at 500, these principles do not "excuse [Abu-Joudeh's own] failure to put the actual documents before the district court and on the record, prior to judgment," *Murdock*, 398 F.3d at 500; *see also Sigler*, 532 F.3d at 477–78 ("Permitting [the plaintiff] to supplement the record on appeal with information that she could have easily obtained much earlier would not advance the interests of justice and would not further efficient use of judicial resources."); *Romero v. Buhimschi*, 396 F. App'x 224, 230 n.1 (6th Cir. 2010) ("Because Romero has failed to argue any of the equitable factors for expanding the record on appeal, we deny this motion.").

Even if the standard for judicial notice applied instead, Abu-Joudeh's motion would still fail. This is because the facts he asks us to notice—namely the contents of the police report and his deposition transcript—are "subject to reasonable dispute." Fed. R. Evid. 201(b). Whether Sheets broke into Abu-Joudeh's garage is strongly disputed by the parties, and this Court has repeatedly denied motions styled as requests for judicial notice that sought to introduce additional evidence concerning a disputed issue of fact. *E.g., Cary v. Cordish Co.*, 731 F. App'x

401, 407–08 (6th Cir. 2018); *Zebari v. CVS Caremark Corp.*, No. 16-261, 2017 WL 7734059, at *4 (6th Cir. Nov. 15, 2017) (order); *Sigler*, 532 F.3d at 476; *United States v. Coker*, 23 F. App'x 413, 415 (6th Cir. 2001) (order); *see also Turner v. Ramirez*, No. 98-6413, 1999 WL 1023998, at *1 (6th Cir. Nov. 4, 1999) (order) ("Turner now moves this court to take judicial notice of correspondence and other materials. This motion will be denied insofar as it seeks to supplement the record with evidence that was not presented to the district court."). Abu-Joudeh's motion is no different.

At bottom, Abu-Joudeh's motion for judicial notice is really a motion to supplement the record with new evidence that he failed to submit in opposition to summary judgment below. Accordingly, we deny Abu-Joudeh's motion and limit our review to the district court record.

## III. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

We review the district court's grant of summary judgment de novo. *E.g.*, *King v. United States*, 917 F.3d 409, 421 (6th Cir. 2019) (citing *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc)). A party is entitled to summary judgment if she shows "there is no genuine dispute as to any material fact and . . . [she] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016) (quoting *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 551 (6th Cir. 2002), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

The burden of demonstrating the absence of a genuine dispute of material fact first rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the burden then shifts to the nonmoving party to establish a "genuine issue" for trial via "specific facts." *Id.* at 324. Additionally, the moving party is entitled to summary judgment when the nonmoving party "fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

When evaluating a motion for summary judgment, this Court must "view[] [the evidence] in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). This includes drawing "all justifiable inferences" in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but [only] to determine whether there is a genuine issue for trial." *Jackson*, 814 F.3d at 775 (quoting *Anderson*, 477 U.S. at 249).

## B. Discussion

The district court held that to avoid summary judgment, Abu-Joudeh needed to submit evidence suggesting that Sheets was the one who opened the garage. *Abu-Joudeh II*, 2019 WL 1090746, at *3. The court found that Abu-Joudeh had not done so, and had instead relied "on speculation [and] conjecture" that Sheets was the perpetrator. *Id.* While the district court is right on the law, we cannot say the same when it comes to the facts. When viewing the evidence in the light most friendly to Abu-Joudeh, and drawing all reasonable inferences in his favor, the record suggests that Sheets was the "third officer" who opened Abu-Joudeh's garage. Because this presents a genuine issue of fact for the jury to resolve at trial, the district court erred by granting summary judgment in this case.

To prevail in a claim under 42 U.S.C. § 1983, a plaintiff must show that the defendant was "personally involved in the [alleged] constitutional violations." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010); *accord, e.g.*, *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013). This is because, in a suit for damages, "[e]ach defendant's liability must be assessed individually based on his own actions." *Pollard v. City of Columbus*, 780 F.3d 395, 402 (6th Cir. 2015) (alteration in original) (quoting *Binay*, 601 F.3d at 650); *accord, e.g.*, *Fazica v. Jordan*, 926 F.3d 283, 289 (6th Cir. 2019). Thus, to survive summary judgment, a plaintiff must put forward evidence suggesting that the defendant participated in the violation of the plaintiff's rights, since "[a]s a general rule, mere presence at the scene of a search, without a showing of

direct responsibility for the action, will not subject an officer to liability." *Binay*, 601 F.3d at 650 (quoting *Ghandi v. Police Dep't of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984)); *accord, e.g.*, *Gardner v. Evans*, 920 F.3d 1038, 1051–52 (6th Cir. 2019); *Fazica*, 926 F.3d at 289; *Burley*, 729 F.3d at 620. In this case, Abu-Joudeh alleges that Sheets himself broke into the garage to aid the repossession agents.

In rejecting the magistrate judge's recommendation and granting Sheets summary judgment, the district court focused on the magistrate judge's statement that Abu-Joudeh "need not provide specific identifying information to create a question of fact about whether Sheets was the officer who opened the garage." *Abu-Joudeh I*, 2019 WL 2219738, at *3. However, a better view of the cases cited by the magistrate judge is that they discuss what identifying information is actually needed to create such a question of fact. Sheets suggests that the "offending officer" must be identified by "name, department, or description" to overcome summary judgment (Appellee Sheets Br. at 19), but this Court's cases only require enough evidence to support a reasonable inference that the defendant was the officer in question.

For example, in *Binay v. Bettendorf*, the plaintiff testified that "the officer with the shotgun was the one who pointed his gun at Plaintiffs throughout the interrogation." 601 F.3d at 651. Because the defendant "admitted to carrying a shotgun during the raid," and another officer "testified that only one officer would carry a shotgun on a raid," the jury could reasonably infer that the defendant was personally involved in the constitutional violation. *Id.*; *see also id.* (finding "there [was] a question of fact as to whether [another officer] was one of the officers pointing a gun at or securing Plaintiffs during some part of the raid" when that officer carried a firearm during the raid, was present for several key incidents, and wore a mask that prevented a more detailed identification). Similarly, in *Pershell v. Cook*, 430 F. App'x 410, 416 (6th Cir. 2011), although the plaintiff "was unable to see the officers standing above and behind him at the precise moment of the blows to his body, he [still] provided significant information about the location and conduct of the officers based on his own sensory observations." Because the officers also provided accounts of the incident, these sources together could "provide the jury with sufficient information to determine the liability of each individual defendant for the alleged constitutional violation," thereby precluding summary judgment. *Id.*

The district court tried to distinguish these cases, saying they are specific to "situations in which the officers' actions impede the plaintiff's ability to identify them." *Abu-Joudeh II*, 2019 WL 1090746, at *3; *see also Fazica*, 926 F.3d at 292 ("[W]here a plaintiff who was unable to identify clearly which officers committed specific acts during the incident produces evidence that places an individual defendant in a small group of officers that committed allegedly unconstitutional acts within each other's presence, the plaintiff's claim against that defendant may survive summary judgment."); *Greer v. City of Highland Park*, 884 F.3d 310, 315–16 (6th Cir. 2018) ("[C]ourts are disinclined to dismiss complaints that fail to allege specific conduct by each officer when the officers' actions have made them impossible to identify."). But the portions of these cases relied on by the magistrate judge reflect situations in which the plaintiff *did* identify the officers in question, just not by name and only through combining different pieces of evidence.

Abu-Joudeh uses that same approach. As discussed above, Yasmeen testified that the "third officer" entered her house, watched her when she was sitting on the couch, and then helped the repossession agents break into the garage. (Yasmeen Dep., R. 77-1 at PageID #876–79, #881–84; *see also id.* at #882 (noting that Yasmeen only "talked to [the fourth officer] from afar" and that "he did not approach" the garage).) Schneider's police report suggests that this officer was Sheets, saying that "[o]nce Chief Sheets showed up [Schneider] advised him to watch Yasmeen so she didn't get up and interfere." (Police Report, R. 55-8 at PageID# 410.) And while Leaveck could not identify which officer opened the garage, he testified that it was a police officer who did this, and not one of the repossession agents. Taken together, these pieces of evidence indicate that Sheets was the one who opened the garage.

Even without Leaveck, Yasmeen's testimony is enough to show that it was the officer who broke into the garage, not one of the repossession agents. She said that the third officer grabbed a metal bar and was using it in an attempt to pry open the electric garage door. And while the officer was standing with the two repossession agents at the side door, so Yasmeen could not see which of the three broke open that door, a reasonable juror could easily infer that it was the police officer who did so, given the fact that he was holding the metal bar and had already attempted to open the electric door.

Looking past the police report, Yasmeen's physical description also creates a genuine issue of fact as to whether Sheets was the officer in question. Yasmeen's testimony suggests that neither Schneider nor Sebring opened the garage, leaving only Sheets and the other unidentified officer. But Yasmeen provided physical descriptions of both unidentified officers, testifying that the "third officer" was mostly bald with a small amount of blond or dirty blond hair, whereas the "fourth officer" had dark or black hair. (Yasmeen Dep., R. 77-1 at PageID #880–83.) These differing descriptions would allow the jury to identify whether Sheets was the officer who broke into Abu-Joudeh's garage, and Sheets has provided no evidence suggesting that he does not match Yasmeen's description. In sum, when viewing the evidence in the best light for Abu-Joudeh, and after drawing all reasonable inferences in his favor, the record reflects a genuine issue of fact as to whether Sheets was the officer who opened Abu-Joudeh's garage.

## IV. CONCLUSION

While the district court was correct that Abu-Joudeh needed to submit evidence suggesting that Sheets was the officer who opened his garage, the record shows that Abu-Joudeh met his burden. Accordingly, we reverse the district court's grant of summary judgment, deny the motion to take judicial notice, and remand this case for further proceedings.