NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0497n.06

Case No. 19-6284

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Aug 25, 2020
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MILTON RHEA, | ) | |
| | ) | |
| *Plaintiff-Appellant*, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| WEST TENNESSEE VIOLENT CRIME & | ) | TENNESSEE |
| DRUG TASK FORCE, ET AL., | ) | |
| | ) | |
| *Defendants-Appellees*. | ) | |

Before: GUY, BOGGS, and WHITE, Circuit Judges.

BOGGS, Circuit Judge.

Milton Rhea, a former canine officer, sued the West Tennessee Violent Crime & Drug Task Force ("the Task Force"), alleging a violation of the federal Fair Labor Standards Act ("FLSA") and associated claims under state law. But Rhea has not sued a proper party. The Task Force was not Rhea's "employer" under the FLSA, and so we affirm the district court's grant of summary judgment to the Task Force on that claim. Moreover, Rhea's true employer, the District Attorney General ("DAG") for the 30th Judicial District—has asserted sovereign immunity along with two other DAGs added as defendants during the litigation. Rhea never responded to this assertion before the district court, and so he has forfeited any argument against it on appeal. We thus also affirm the grant of summary judgment to the DAGs.

## I.    BACKGROUND

Rhea began his law-enforcement career in November 2009 as an employee of the DAG for the 30th Judicial District of Tennessee. He was assigned to the Interdiction Unit of the Task Force, where he served as a canine handler. Rhea claims that while he served on the Task Force, he spent considerable time caring for his canine partner while he was off duty, but that he was not compensated for any of his off-duty responsibilities. Rhea claims that he made several unsuccessful inquiries to his supervisors regarding this claim, and that he was terminated in April 2016 because of these persistent inquiries, just two months before he qualified for a pension.

Rhea filed the instant lawsuit in Tennessee Chancery Court on March 28, 2017 against two defendants: the Task Force, and Shelby County, Tennessee. His complaint alleged a violation of the FLSA for unpaid wages and two associated state-law claims: a statutory claim under Tennessee's Public Protection Act, Tenn. Code Ann. § 50-2-103(h); and a common-law claim of retaliatory discharge, *see Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528 (Tenn. 2002). The defendants removed the case to the United States District Court for the Western District of Tennessee. The district court found plaintiff abandoned his state law claims, and plaintiff acknowledged that he "dropped all state law claims" in his briefing to this court. Appellant's Br. 15. We likewise consider these claims abandoned.

Following discovery, both Shelby County and the Task Force moved for summary judgment. The district court granted summary judgment for Shelby County after it concluded that the County was not Rhea's employer. The court noted that Rhea and the County had agreed that "Shelby County records indicate[d] Plaintiff was an employee of the District Attorney General's office" and that the County had no control over any aspect of Rhea's employment, including hiring,

firing, and assignments. Instead, the County served only an administrative role in processing Rhea's payroll and benefits.

The court also granted summary judgment to the Task Force after concluding that it lacked the capacity to be sued. The Task Force is an intergovernmental agency organized under Tennessee's Interlocal Cooperation Act, which provides that "[a]ny power or powers, privileges or authority exercised or capable of exercise by a public agency . . . may be exercised and enjoyed jointly with any other public agency of this state having the power or powers, privilege or authority[.]" Tenn. Code Ann. § 12-9-104(a)(1). The Task Force was formed through a Joint Cooperation Agreement between the DAGs of Tennessee's 28th, 29th, and 30th Judicial Districts,[1] and the agreement explicitly states that it "shall not be interpreted to create a separate legal entity." Tennessee's Interlocal Cooperation Act provides that "[i]n the event that the agreement does not establish a separate legal entity . . . the agreement shall" outline several additional provisions— including the manner of acquiring and disposing of property and how the organization would be governed. *Id*. at § 12-9-104(d). Rhea did not contest that the Task Force meets all the statutory requirements under the Act to not have the status of a legal entity. Instead, he argued below that— despite the document's explicit language—the Task Force's *actions* demonstrate that it is a legal entity with the capacity to be sued. Appellant's Br. 28–30.

---

[1] These three districts are in the greater-Memphis area. The 30th is the entirety of Shelby County (where Memphis is located), the 29th encompasses Dyer County and Lake County (in the northwest of the state), and the 28th encompasses Haywood County, Crockett County, and Gibson County (also in the northwest of the state).

The district court rejected Rhea's argument, resting its ruling on two key interpretations of Federal Rule of Civil Procedure 17(b)(3).[2] The court first concluded that, because the joint agreement stated that it "shall not be interpreted to create a separate legal entity" and because it included all of the necessary requirements for such status under Tennessee law, the Task Force that the agreement created was not a distinct entity under Rule 17(b)(3). The court noted that it could find no authority suggesting that an intergovernmental entity's actions affected its capacity to be sued. The court next concluded that the Task Force also did not fall under Rule 17(b)(3)(A)'s exception permitting a plaintiff to sue an "unincorporated association." It noted that the Sixth Circuit has not decided whether intergovernmental entities could be an "unincorporated association" for purposes of Rule 17(d)(3)(A), but it held that other courts have found such entities to not qualify for the exception, and found those rulings persuasive. Rhea insists that both conclusions were erroneous.

During the time between the district court's grant of summary judgment to Shelby County and its grant of summary judgment to the Task Force, the parties held a scheduling conference where the Task Force stated that it was planning to assert that it lacked the capacity to be sued. According to the district court, Rhea's attorney then "made a motion to add the attorneys general for the 28th, 29th, and 30th Judicial Districts of Tennessee as Defendants" to which counsel for the Task Force "did not object." Following the conference, the court added the DAGs as

---

[2] Rule 17(b) states in full:

Capacity to sue or be sued is determined as follows:

(1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile;

(2) for a corporation, by the law under which it was organized; and

(3) for all other parties, by the law of the state where the court is located, except that:

(A) a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws; and

(B) 28 U.S.C. §§ 754 and 959(a) govern the capacity of a receiver appointed by a United States court to sue or be sued in a United States court.

defendants through an internal court order. And after the Task Force moved for summary judgment, the DAGs did as well, asserting sovereign immunity. Rhea responded only to the *Task Force's* motion and never filed a response to the DAGs' motion, which the district court noted in its order granting summary judgment to both sets of defendants. This appeal followed.

## II. DISCUSSION

We review a district court's grant of summary judgment de novo. *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849 (6th Cir. 2020). But when deciding an appeal, we "can affirm a decision of the district court on any grounds supported by the record, even if different from those relied on by the district court." *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 886 (6th Cir. 2020) (quoting *Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999)).

Here, we need not decide the issue of whether the Task Force can be sued because the record is clear that the Task Force was not Rhea's "employer" for purposes of his FLSA claim. Determining employer status under the FLSA is a pure question of law. *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). The Supreme Court has held that the determination of whether someone is an employer should focus on "the 'economic reality' rather than 'technical concepts'" of the employment. *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961). Under this directive, our circuit precedent maintains that "[i]n deciding whether a party is an employer, 'economic reality' controls rather than common law concepts of agency." *Dole*, 942 F.2d at 965. For example, in *Dole*, we held that a corporate officer who owned 100% of the stock of a travel company was an employer because he was "involved in the business operations of the corporation," "controlled the purse strings of the corporation," and "had control over significant aspects of the corporation's day-to-

day functions, including determining employee salaries." *Id*. at 966; *see also Fegley v. Higgins*, 19 F.3d 1126, 1131 (6th Cir. 1994) (holding that an individual who "controlled significant functions of the business, and determined salaries and made hiring decisions" was an employer). Other courts of appeals have listed nonexhaustive factors relevant to the "economic realities" of the job to aid in determining an alleged employer's status. These factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citation omitted); *see also Thompson v. Real Est. Mortg. Network*, 748 F.3d 142, 149 (3d Cir. 2014) (establishing the same four factors for determining employer status).[3]

With these considerations in mind, it is clear that the DAG for the 30th Judicial District was Rhea's true "employer," not the Task Force. The Task Force did not pay Rhea or maintain his employment records. He was on Shelby County's payroll, but County records indicated that he was "an employee of the District Attorney General's office, and he was assigned to the Task Force." The Task Force also did not make any determinations regarding Rhea's pay. Thomas Helldorfer, the Task Force's director, stated at his deposition that those decisions were made "through the County Commission." Although the Task Force obtained funding that was independent of its constituent members—generally through asset forfeitures from its law-

---

[3] Other courts have used similar factors in determining whether an individual is an employee or an independent contractor. For example, the Fifth Circuit considers:

> (1) [T]he degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. No single factor is determinative.

*Hopkins v. Cornerstone America*, 545 F.3d 338, 343 (5th Cir. 2008) (citation omitted); *see also Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311–12 (11th Cir. 2013) (using the same five factors as *Hopkins* and adding a sixth factor: "the extent to which the service rendered is an integral part of the alleged employer's business").

enforcement activities or through federal grants—that funding was not used to pay officers assigned to the Task Force. Instead, they were paid with funds supplied by each DAG office. The Task Force also could not make determinations about hiring without some consultation with a DAG. The record establishes that Task Force members were generally hired through each DAG office, and then assigned to the Task Force. And although the joint agreement establishing the Task Force provides that the Task Force can hire members "exclusively," it clarifies that those individuals would be viewed as "District Attorney Criminal Investigators assigned to the task force by a District Attorney General." Importantly, authority regarding terminations was reserved for the DAGs. Each DAG could, without consulting the Task Force, fire any Task Force member from his or her office.

Thus, it is apparent that the Task Force was not Rhea's employer[4] because it did not have control over the key "economic" aspects of Rhea's employment. Control over those decisions was retained by the DAG for the 30th Judicial District. Although the Task Force was responsible for assigning Rhea's day-to-day tasks, that factor alone is insufficient to make the Task Force Rhea's employer. We thus affirm the district court's grant of summary judgment to the Task Force on the FLSA claim.

However, this does not end our analysis, as Rhea also appeals the district court's grant of summary judgment to the DAGs who formed the Task Force. Yet in the proceedings below, when

---

[4] Neither would the Task Force be a "joint employer" under the FLSA. The criteria for determining joint-employer liability focuses on the same factors as that of determining employer status. A Department of Labor regulation states that four factors are relevant to the determination, including whether the alleged joint employer:

  (i) Hires or fires the employee;
  (ii) Supervises and controls the employee's work schedule or conditions of employment to a substantial degree;
  (iii) Determines the employee's rate and method of payment; and
  (iv) Maintains the employee's employment records.

29 C.F.R. § 791.2(a)(1).

the three DAGs filed a motion for summary judgment asserting sovereign immunity, Rhea did not respond. "As a general rule in this Circuit, arguments raised for the first time on appeal are forfeited." *Swanigan v. FCA US LLC*, 938 F.3d 779, 786 (6th Cir. 2019) (quoting *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 781 (6th Cir. 2015)). We also deem "issues not raised in response to dispositive motions forfeited." *Ibid.*

Rhea asserts that the district court included the DAGs as defendants on its own initiative. He insists that this provides a reason for us to consider his arguments against the DAGs even if he never made any argument against their assertion of sovereign immunity. But based on the summary-judgment record, the district court only added the DAGs as defendants upon Rhea's request. And when they filed a summary-judgment motion and asserted sovereign immunity, Rhea never filed a response to the motion nor addressed in any document any of the points made in that motion. Thus, the issue of sovereign immunity as it pertains to the DAGs was not "raised by the district court," as Rhea claims, but rather was squarely presented in a dispositive motion. Appellant's Reply Br. 23.

It is a general principle that "issues not presented to the district court but raised for the first time on appeal are not properly before the court." *Am. Copper & Brass, Inc.*, 757 F.3d at 545 (quoting *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993)). Because Rhea's argument against the DAGs' assertion of sovereign immunity was not presented to the district court and was raised for the first time on appeal, it is therefore forfeited, and our review is limited. *See, e.g.*, *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 407 (6th Cir. 1992) (explaining that in reviewing a grant of an unopposed motion for summary judgment, our review is limited to determining "whether the facts, as presented by the defendants, required a determination that they were entitled to judgment as a matter of law"). Further, the record is clear that the DAGs were not parties to

this action at the time of removal and asserted sovereign immunity in their Answer to the Amended Complaint.  Under the circumstances, the district court's grant of summary judgment to the DAGs on the basis of sovereign immunity is adequately supported.

* * *

For the foregoing reasons, we AFFIRM the judgment of the district court.