RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0186p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

JENNIE V. WRIGHT and SAUL WRIGHT, on behalf of
Jawand Lyle and Brendon Burnett,

                *Plaintiffs-Appellants*,

    *v.*

LOUISVILLE METRO GOVERNMENT, et al.,

                *Defendants-Appellees*.

No. 24-5965

─────────────────

Appeal from the United States District Court for the Western District of Kentucky at Louisville.
No. 3:21-cv-00308—Benjamin J. Beaton, District Judge.

Decided and Filed: July 16, 2025

Before: BATCHELDER, GIBBONS, and THAPAR, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:** Corey M. Shapiro, William E. Sharp, Crystal Mahoney, ACLU FOUNDATION OF KENTUCKY, Louisville, Kentucky, Lauren Willard Zehmer, Sameer Aggarwal, Emma Keteltas Graham, COVINGTON & BURLING LLP, Washington, D.C., for Appellants. Earl L. Martin III, Darryl S. Lavery, STEPTOE & JOHNSON PLLC, Louisville, Kentucky, Joseph R. Abney, JEFFERSON COUNTY ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellees. Matthew F. Kuhn, John H. Heyburn, Jacob M. Abrahamson, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Amicus Curiae.

─────────────────

## OPINION

─────────────────

THAPAR, Circuit Judge. Louisville Metro Police Department officers searched Jennie and Saul Wright's home. The Wrights say that the search violated their constitutional rights.

So they sued the city of Louisville and "unknown" police officers under 42 U.S.C. § 1983.  The district court dismissed the Wrights' claims, as well as the claims of their great-nephews who were living with them at the time.  We lack appellate jurisdiction over the nephews' claims, but we affirm the district court's dismissal of the Wrights' claims.

I.

On May 7, 2020, Louisville Metro Police Department officers searched Jennie and Saul Wright's home on 1732 Columbia Street in Louisville, Kentucky.  Jennie and Saul lived there with their two great-nephews, Jawand Lyle and Brendon Burnett.[1]

Just under a year later, Jennie and Saul sued Louisville Metro Government and "unknown police officers" on behalf of themselves and Jawand and Brendon in Kentucky state court. Jennie and Saul were "next friends and guardians" of Jawand and Brendon, who were minors at the time of the lawsuit's filing.  R. 1-1, Pg. ID 6.  Their complaint alleged that the officers, among other things, violated their federal constitutional right to be free from unreasonable searches and seizures.  They also sought damages from the Louisville Metro Government under a *Monell* theory of liability.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  So the plaintiffs named the Louisville Metro Government and "unknown police officers" as defendants. R. 1-1, Pg. ID 6.

Louisville removed the case to federal court and moved to dismiss the claims against it. The district court granted Louisville's motion.  The Wrights appealed, and this court dismissed the appeal for lack of jurisdiction.  *Wright v. Louisville Metro Gov't*, No. 22-5134 (6th Cir. Oct. 7, 2022).  The Wrights' counsel then withdrew from representing them.

Proceeding pro se, the Wrights then filed an amended complaint naming the previously "unknown" officers.  Jawand and Brendon were also named as plaintiffs alongside the Wrights in the amended complaint.  And following a series of motions and rulings, the magistrate judge conditionally allowed Jawand and Brendon to proceed pro se.  So Jawand and Brendon were representing themselves when the defendants moved to dismiss Jennie's and Saul's claims.

---

[1]We mean no disrespect by the use of first names.  We use plaintiffs' first names here only to distinguish between the family members and to make things easy on the reader.

In their motion to dismiss, the defendants made clear that they were moving to dismiss *only* Jennie's and Saul's claims.  As to Jawand's and Brendon's claims, the defendants sought a more definite statement about Jawand's and Brendon's birth dates.  *See* Fed. R. Civ. P. 12(e).  The defendants moved for a more definite statement under Rule 12(e) on the very same day that they moved to dismiss Jennie's and Saul's claims.**2**  (Weeks later, the magistrate judge denied Jawand's and Brendon's request for a court-appointed attorney.  So Jawand and Brendon remained pro se.)

Next, the defendants moved for judgment on the pleadings with respect to all the plaintiffs' claims.  After the motion was ripe, the district court granted the defendants' motion to dismiss.  In doing so, it discussed only the claims of "Plaintiffs Jennie and Saul Wright."  R. 78, Pg. ID 509.  Still, having granted that motion, the district court said that it had thereby "dismissed all remaining claims."  *Id.* at Pg. ID 513.  So it denied as moot the remaining motions on the docket.  Those purportedly moot motions included the defendants' motion for a more definite statement from Jawand and Brendon and the defendants' motion for judgment on the pleadings.  The court's accompanying judgment is to the same effect:  it "grant[ed] all named Defendants' motions to dismiss and dismiss[ed] the claims against any other 'unknown police officers.'"  R. 79, Pg. ID 514.  So, the court "enter[ed] judgment in favor of the Defendants" and struck "this case from the active docket."  *Id.*

\*        \*        \*

Before we address this appeal, consider the two critical points that emerge from the procedural history:

First, by the time the district court ruled on the defendants' motion to dismiss, Jawand and Brendon were representing themselves.

---

**2**Jennie and Saul filed a response to that motion to dismiss.  Jawand and Brendon didn't file a response to the motion to dismiss because the defendants had not moved to dismiss their claims.

Second, the defendants' motion to dismiss that the district court granted was a motion to dismiss only Saul's and Jennie's claims.  The defendants did not move to dismiss Jawand's or Brendon's claims.  Yet the district court dismissed Jawand's and Brendon's claims too.[3]

## II.

Following the district court's order, Jennie and Saul Wright filed a notice of appeal.  A critical threshold question is whether Brendon and Jawand were part of that notice of appeal.  This question is important because it goes to this court's jurisdiction.  Federal Rule of Appellate Procedure 3 sets forth the requirements for a proper notice of appeal.  If a party does not meet those requirements, we lack jurisdiction over that party's appeal.  *Smith v. Barry*, 502 U.S. 244, 248 (1992).

Rule 3 mandates that the notice of appeal "specify the party or parties taking the appeal by naming each one in the caption or body of the notice."  Fed. R. App. P. 3(c)(1)(A).  Here, the notice of appeal's case caption listed only Saul and Jennie Wright as plaintiffs.  The body of the notice reads as follows:  "Notice is hereby given that *the above-named plaintiffs* hereby appeal[] to the United States Court of Appeals for the Sixth Circuit; from the order entered on 19th day of September, 2024 denying plaintiffs' civil rights complaint pursuant to [42 U.S.C. § 1983]."  R. 80, Pg. ID 515 (emphasis added).  The notice is then signed by Saul Wright and Jennie Wright.

Given the caption, the body, and the signatures, the notice of appeal designated only Saul and Jennie as appellants.  Jennie and Saul alone are referenced in the notice of appeal, and by this juncture in the litigation, Jawand and Brendon were representing themselves separately.  Indeed, Jennie and Saul would have been legally incapable of asserting Jawand's and Brendon's right to appeal the district court's adverse judgment.  *See* 28 U.S.C. § 1654; *Olagues v. Timken*, 908 F.3d 200, 203 (6th Cir. 2018) (noting that "we have consistently interpreted § 1654 as

---

[3]Alternatively, if the district court is read to *not* have dismissed Jawand's and Brendon's claims, then it erred in denying the remaining motions as moot (like the defendants' motion for a more definite statement from Jawand and Brendon).  If Jawand's and Brendon's claims weren't dismissed, then the defendants' motions before the court seeking a more definite statement and a judgment on the pleadings as to those claims were still alive.  But that's not the best reading of the district court's opinion, order, and judgment.  The district court dismissed "*all*" claims against the defendants; that "all" encompasses Brendon's and Jawand's claims, even though the defendants had not moved to dismiss those claims.

prohibiting pro se litigants from trying to assert the rights of others"). And since the magistrate judge had established that Jawand and Brendon were no longer minors and that each was capable of representing himself, neither Saul nor Jennie could litigate on Jawand's or Brendon's behalf under Federal Rule of Civil Procedure 17. *See* Fed. R. Civ. P. 17(c).

To be sure, Rule 3 also provides that "[a]n appeal must not be dismissed for informality of form or title of the notice of appeal" or "for failure to name a party whose intent to appeal is otherwise clear from the notice." Fed. R. App. P. 3(c)(7). And we must construe notices of appeal liberally, especially for pro se litigants. *United States v. Willis*, 804 F.2d 961, 963 (6th Cir. 1986); *Owens v. Keeling*, 461 F.3d 763, 776 (6th Cir. 2006). But however much we strain to construe this notice of appeal to include Brendon and Jawand, it conveys no intent on the part of either Jawand or Brendon to appeal. Plaintiffs direct our attention to the fact that the notice's body references the amended complaint of "*plaintiffs*," and it's true that Jawand and Brendon were part of that amended complaint and signed it. Still, only the "*above-named* plaintiffs"— Jennie and Saul—elected to appeal. R. 80, Pg. ID 515 (emphasis added).

In short, plaintiffs are now asking us to conflate "Jennie and Saul" with "Jennie, Saul, Jawand, and Brendon," as the district court did when it dismissed all plaintiffs' claims even though the defendants had moved to dismiss only Jennie's and Saul's claims. We won't do that.

In any event, Jawand's and Brendon's failures to appeal might not be fatal. They still can move for relief from the district court under Rule 60(b)(1) in light of the district court's dismissal of their claims even though no motion to dismiss their claims was before it. *See* Fed. R. Civ. P. 60(b)(1); *Kemp v. United States*, 596 U.S. 528, 530, 534 (2022) (holding that "a judge's errors of law" count as "mistakes" under Rule 60(b)(1)). They must make that motion within one year of the district court's judgment. *See* Fed. R. Civ. P. 60(c)(1); *Kemp*, 596 U.S. at 533.

### III.

We now turn to the district court's dismissal of Jennie's and Saul's claims against the individual police officers. The district court dismissed their claims as untimely. We agree.

A.

Section 1983 empowers plaintiffs like the Wrights to sue state officers for alleged violations of their federal constitutional rights, but it doesn't provide a statute of limitations to govern such claims. *See* 42 U.S.C. § 1983. Instead, section 1988 tells us that where there is no "suitable" federal law "adapted to the object" of exercising jurisdiction over federal civil rights claims like section 1983 suits, federal courts should borrow state law. 42 U.S.C. § 1988(a). Federal courts thus look to the relevant state's general personal-injury statute of limitations to govern the statute of limitations for section 1983 suits. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Kentucky, that statute of limitations is one year. *See* Ky. Rev. Stat. Ann. § 413.140(1)(a); *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990).

Jennie and Saul Wright's original state-court complaint complied with that statute of limitations, since they filed it just under a year after their cause of action accrued. Recall that the original complaint named only the Louisville Metro Government and "unknown police officers" as defendants. The amended complaint provided the names of those officers, but the amended complaint was filed over three years after the incident.

Of course, three-plus years falls well outside of Kentucky's one-year statute of limitations. So the Wrights' claims in the amended complaint against the named officers are untimely unless they "relate back" to the original complaint under Federal Rule of Civil Procedure 15(c)(1). As relevant here, Rule 15(c)(1) provides that an amended complaint "relates back to the date of the original pleading" when the plaintiff made "a mistake concerning the proper party's [the defendant's] identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).

In *Zakora v. Chrisman*, this court explained that not knowing "whom to sue is not a misunderstanding and thus is not a mistake for the purposes of Rule 15." 44 F.4th 452, 482 (6th Cir. 2022). When they sued "unknown" officers in their original complaint, the Wrights did not know the proper parties to sue. Under *Zakora* and the precedents it drew upon, the Wrights' "absence of knowledge" didn't amount to a "mistake" that falls within Rule 15's purview. *Id.*; *see also Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996) ("Substituting a named defendant for a 'John Doe' defendant is considered a change in parties, not a mere substitution of parties.").

So, the Wrights' amended complaint is untimely; they can't benefit from Rule 15's relation-back provision.

The Wrights respond that the law was unclear when they filed their initial complaint: *Zakora* had yet to be decided, and *Zakora* cleared up alleged confusion in this court's caselaw as to "whether an amendment naming a previously unknown Doe defendant can constitute a 'mistake' under Rule 15(c)(1)(C)." *Zakora*, 44 F.4th at 481. That is critical, they claim, because the sorts of "mistakes" that Rule 15 covers include mistakes of law. *See, e.g.*, *Black-Hosang v. Ohio Dep't of Pub. Safety*, 96 F. App'x 372, 375–76 (6th Cir. 2004). In other words, their mistake of law as to the meaning of Rule 15 empowers them to take advantage of Rule 15's relation-back provision after all.

But the Wrights are wrong about the sorts of mistakes of law that Rule 15 covers. Rule 15's plain text allows for relation-back when, among other things, one party was mistaken *as to the identity of a proper party*. How can a mistake about a proper party's identity include a "mistake of law"? A "mistake of law" in this context means the plaintiff thought that a particular claim was legally viable against a particular defendant, when in reality the plaintiff had to bring his claim against a *different* defendant for it to be cognizable in federal court. For example, Rule 15 will provide for relation-back when a plaintiff mistakenly sues an institutional defendant (such that his suit is barred by sovereign immunity) rather than an individual defendant who can in fact be sued. *See id.*; *see also* Fed. R. Civ. P. 15 advisory committee note (1966 amendment). So too if a plaintiff mistakenly sues an individual defendant in his official capacity rather than in his individual capacity. *See, e.g.*, *Hill v. Shelander*, 924 F.2d 1370, 1374–78 (7th Cir. 1991).

But Rule 15 does not allow for relation-back when a party is mistaken as to what counts as a "mistake" under the Rule in the first place. Again, under the Rule, the "mistake" must relate to "the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). The Wrights tell us they were mistaken as to whether they were allowed under pre-*Zakora* Sixth Circuit precedent to substitute named defendants for "unknown" defendants. That's a mistake of law with respect to the legal meaning of "mistake" in Rule 15, not a mistake of law as to "the legal requirements of [the plaintiffs'] cause of action." *Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 36 (2d Cir. 1996). The latter may qualify for relation-back under Rule 15; the former does not.

Next, the Wrights argue that we should equitably toll the statute of limitations. The Wrights invoke principles of "equity and fairness," as they emphasize that they worked diligently to file their claim within the one-year statute of limitations. Appellants' Br. at 28. But the Wrights didn't raise equitable tolling below, so they forfeited the argument. *Rembisz v. Lew*, 830 F.3d 681, 683 (6th Cir. 2016). And even if they had preserved their equitable tolling argument, "[i]t would fail anyway." *Id.* Neither a pro se plaintiff's ignorance of the law nor a lawyer's legal misstep tends to justify equitable tolling. *Nitch v. E. Gateway Cmty. Coll.*, 857 F. App'x 222, 223 (6th Cir. 2021). So the Wrights' confusion about the nature of Rule 15 doesn't warrant equitable tolling. In short, "federal courts sparingly bestow equitable tolling," and we decline to do so here. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000).

In fairness, equitable tolling might nonetheless seem appropriate here: The magistrate judge advised the Wrights to find out the names of the individual officers and amend their complaint accordingly. As the district court observed, it does seem "harsh from the perspective of a *pro se* litigant" when his amended complaint is dismissed as time-barred after a magistrate judge ordered him "to discover the identities of unknown officers." R. 78, Pg. ID 512. But the magistrate judge issued that order in April 2023, and by that time, the one-year statute of limitations had already run out. So the court's order didn't further delay the Wrights as the clock continued ticking; the time was already up. And back when the clock did run out in May 2021, "the Wrights were still represented" by counsel. *Id.*

B.

Failing under their Rule 15 relation-back theory, the Wrights counter that we should not use Kentucky's too-short one-year statute of limitations for their 42 U.S.C. § 1983 claims at all. But as explained above, section 1988 tells us that when there's no "suitable" federal law on-point in section 1983 or other civil rights statutes, we look to state law. 42 U.S.C. § 1988(a). And in 1984, the Supreme Court in *Burnett v. Grattan* held that there's no "suitable" federal law to govern the statute of limitations for section 1983 claims. 468 U.S. 42, 48–49 (1984). So we look to state law, and here the applicable state law provides for just a one-year statute of limitations. Ky. Rev. Stat. Ann. § 413.140(1)(a).

The Wrights argue that, in fact, there *is* suitable federal law for the statute of limitations in section 1983 suits:  28 U.S.C. § 1658.  That provision, enacted in 1990 (after the Supreme Court decided *Burnett*), lays down a four-year statute of limitations for all "civil action[s] arising under an Act of Congress enacted *after the date of the enactment of this section*."  28 U.S.C. § 1658 (emphasis added).  Of course, the plain text of section 1658's four-year statute of limitations doesn't capture section 1983 actions:  Section 1983 was enacted in the wake of the Civil War, but section 1658 applies only to causes of action created after 1990.  But to some extent that's neither here nor there, because we look for a "suitable" federal law under section 1988's borrowing framework only when there's no directly applicable federal law in the first place.  So even though section 1658 is not directly applicable, it might still apply if it is "suitable" to section 1983.

Still, the Wrights' attempt to leverage section 1658's four-year statute of limitations comes up short.  In *Burnett*, the Supreme Court stated expressly that "[i]t is now settled that federal courts will turn to state law for statutes of limitations in actions brought under the civil rights statutes."  468 U.S. at 49.  As an inferior court, we can't upend that settlement ourselves.  Thus, absent a change in law or Supreme Court precedent, this court will not buck *Burnett*.

The Wrights' related argument that Kentucky's one-year statute of limitations is too short to vindicate the federal interests undergirding section 1983 also fails.  Congress itself has provided for a one-year statute of limitations in the civil rights context—for actions against those who know of a conspiracy to deprive individuals of their civil rights but fail to act.  *See* 42 U.S.C. § 1986.  Of course, section 1983 and section 1986 claims "are distinct."  *Brown v. Pouncy*, 93 F.4th 331, 337 (5th Cir. 2024).  But the fact that Congress has provided just a one-year statute of limitations for one type of civil rights action undermines the notion that the very same statute of limitations period for section 1983 civil rights actions is insufficient.  *See Burnett*, 468 U.S. at 61 (Rehnquist, J., concurring in the judgment) ("The willingness of Congress to impose a 1-year limitations period in 42 U.S.C. § 1986 demonstrates that at least a 1-year period is reasonable.").

\*          \*          \*

In sum, Kentucky's one-year statute of limitations applies and Rule 15's relation-back provision does not, so the Wrights' claims against the named individual officers are untimely.

## IV.

## A.

The Wrights and the city of Louisville also disagree as to whether the Wrights' *Monell* claim against Louisville was properly dismissed. Before assessing the merits, we must first ensure that we have jurisdiction. We do.

A notice of appeal "encompasses the final judgment . . . if the notice designates an order that adjudicates all remaining claims and the rights and liabilities of all remaining parties." Fed. R. App. P. 3(c)(5)(A). The Wrights' notice of appeal listed the district court's September 19 order, which adjudicated all remaining claims of all remaining parties. Thus, Rule 3 provides that it "encompasses the final judgment," and we have appellate jurisdiction over the Wrights' *Monell* claim.

What about the fact that the Wrights didn't include the *Monell* claim in their amended complaint? They didn't need to, since it had already been dismissed when they amended. *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 616–17 (6th Cir. 2014).

In sum, we have appellate jurisdiction over the Wrights' *Monell* claims, and they did not forfeit those claims by not repleading them in their amended complaint.

## B.

To establish liability against a municipality under *Monell*, plaintiffs must identify a particular municipal policy or custom and show that it caused their constitutional injury. *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). The original complaint included both a failure-to-train theory of *Monell* liability as well as a policy-or-custom theory. The complaint contains only bare legal conclusions, not factual allegations that plausibly allege *Monell* liability. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that to survive a motion to dismiss, "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" (citation omitted)).  Thus, the district court was correct to dismiss the *Monell* claims.

Start with the Wrights' failure-to-train theory.  To survive a motion to dismiss, they had to establish that Louisville's training program was inadequate, that the program's inadequacy resulted from Louisville's deliberate indifference, and that the inadequacy either caused or was closely related to their injury.  *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019).  But the Wrights merely asserted that Louisville "failed to adequately train their officers regarding the process to obtain a Search Warrant and its subsequent execution, which is a violation [of] the Plaintiff's Fourth Amendment Rights."  R. 1-1, Pg. ID 10.  Similarly, they stated that Louisville "failed to train its officers regarding executing Search Warrant[s] to protect the citizens of Louisville['s] Fourth Amendment Rights."  *Id.*  As the district court painstakingly explained, these amount to conclusory assertions, not plausible allegations:  "When stripped of the legal conclusions, the Complaint contains no factual allegations indicating what the training policies were, why they were inadequate, how the city was deliberately indifferent, or how the failures related to the Wrights' injuries."  R. 11, Pg. ID 52.

The same goes for the Wrights' policy-or-custom theory of *Monell* liability.  The Wrights said that Louisville had a "policy, or custom regarding obtaining and executing a Search Warrant" that "deprived" them of their "Fourth Amendment Right to be protected" from "unreasonable search and seizure."  R. 1-1, Pg. ID 9.  The Wrights also asserted that Louisville's "policy and customs" result "in issuance of Search Warrants predominantly in African Americans' neighborhoods without the appropriate probable cause in an unreasonable manner, in clear violation of the Plaintiffs' Fourth Amendment Rights."  *Id.* at Pg. ID 10.  These threadbare assertions failed to adequately allege a policy or custom, nor did they connect the Wrights' injuries to such a policy or custom.

Here on appeal, the Wrights argue that we should take judicial notice of a 2023 Department of Justice report condemning various Louisville police department policies and training as inadequate.  But even if we did that, the DOJ report would not rectify the Wrights' failure to connect the supposed inadequate training and unconstitutional customs and policies to

their specific constitutional injuries.  Thus, the report does not change this court's calculus in affirming the district court.

And we shouldn't consider the report, anyway.  Courts take judicial notice of facts, not documents.  *Abu-Joudeh v. Schneider*, 954 F.3d 842, 848 (6th Cir. 2020).  But the Wrights are requesting that we take judicial notice of the contents of the DOJ report to save their *Monell* claim, which really amounts to an attempt to supplement the record.  *Id.*  We can't grant that motion: "While Federal Rule of Appellate Procedure 10(e)(2) allows for the correction of 'omissions from or misstatements in the record,' it does not allow parties 'to introduce new evidence in the court of appeals.'"  *Id.* (citation omitted).

Even if the Wrights' request was in fact a genuine request to take judicial notice (rather than a motion to supplement the record), we would still deny it.  Federal Rule of Evidence 201(b) allows courts to take judicial notice only of facts "that [are] not subject to reasonable dispute."  Fed. R. Evid. 201(b).  But the allegations in the DOJ report that the Wrights want this court to consider—such as allegations that the department fails to adequately support, supervise, and investigate officers—are subject to reasonable dispute.

Finally, we decline the Wrights' invitation to remand the case to the district court to consider if the DOJ report changes anything.  That's a request to either amend their complaint or reopen the district court's judgment, which would require either a Rule 59 or Rule 60 motion. *See* Fed. R. Civ. P. 59; Fed. R. Civ. P. 60.

\*          \*          \*

We affirm the judgment of the district court with respect to Jennie Wright's and Saul Wright's claims.  This court has no appellate jurisdiction over the dismissal of Jawand's and Brendon's claims because neither Jawand nor Brendon properly appealed.  Jawand and Brendon remain free to file Rule 60(b) motions with the district court.